NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1240                                          Appeals Court

 ONEBEACON AMERICA INSURANCE COMPANY  vs.  NARRAGANSETT ELECTRIC
  COMPANY; AMERICAN HOME ASSURANCE COMPANY & others,[1] third-party
                          defendants.


                        No. 13-P-1240.

        Suffolk.    June 3, 2014. - August 31, 2016.

        Present:  Kantrowitz, Hanlon, & Carhart, JJ.[2]


Conflict of Laws.  Insurance, Comprehensive liability insurance,
     Excess Liability Insurance, Pollution exclusion clause.
     Contract, Insurance, Choice of law clause.  Real Property,
     Environmental damage.

---

     [1] Century Indemnity Company; Certain Underwriters at
Lloyd's, London, and Certain London Market Insurance Companies;
National Union Fire Insurance Company of Pittsburgh, PA
(National Union); Johns Does 1-200; American International
Specialty Lines Insurance Company (AISLIC); and Chartis
Specialty Insurance Company (Chartis).  During the course of the
proceedings below, AISLIC was succeeded by Chartis.  Subsequent
to the proceedings, American Home Assurance Company, Chartis,
and National Union were apparently succeeded by American
International Group, Inc.  For the sake of clarity, we refer to
the parties as their names appear in the pleadings.

     [2] The case was argued before Justices Kantrowitz, Hanlon,
and Carhart.  Following the retirement of Justice Kantrowitz,
Justice Kinder was added to the panel and participated in this
decision.

<u>Civil action</u> commenced in the Superior Court Department on July 25, 2005.

Motions for summary judgment regarding choice of law issues were heard by <u>Allan van Gestel</u>, J., and a motion for reconsideration was considered by him; motions for summary judgment were heard by <u>Margaret R. Hinkle</u>, J., and <u>Peter M. Lauriat</u>, J.; the remaining issues were tried in two phases before them; and entry of final judgment was ordered by Lauriat, J.

<u>Jay T. Smith</u>, of the District of Columbia (<u>A. Hether Cahill</u> with him) for Narragansett Electric Company.
<u>Kevin J. O'Connor</u> for OneBeacon America Insurance Company.
<u>David B. Chaffin</u> for Century Indemnity Company.
<u>Eileen T. McCabe</u>, of New York, & <u>John T. Harding</u>, for Certain Underwriters at Lloyd's, London, & others, were present but did not argue.
<u>Michael F. Aylward</u>, for American Home Assurance Company & others, was present but did not argue.

CARHART, J.  This matter is before us pursuant to the December 28, 2015, order of the Supreme Judicial Court, remanding to this court for express consideration the substantive law to be applied to the interpretation of the insurance contracts at issue in <u>OneBeacon America Ins. Co</u>. v. <u>Narragansett Elec. Co. (No. 2)</u>, 87 Mass. App. Ct. 1126 (2015) (<u>OneBeacon No. 2</u>).  The plaintiff, OneBeacon America Insurance Company (OneBeacon), along with third-party defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively, London), American Home Assurance Company (American Home), and Century Indemnity Company (Century) argued in their respective appeals that a Superior

Court judge erred in determining that Rhode Island law would apply both in deciding whether the insured, Narragansett Electric Company (NEC), was entitled to coverage for environmental contamination at several Rhode Island sites, and in the allocation of damages on the jury's verdicts as to one of the sites.

For background, we refer to OneBeacon America Ins. Co. v. Narragansett Elec. Co. (No. 1), 87 Mass. App. Ct. 417 (2015) (OneBeacon No. 1). Early in the litigation, a judge of the Superior Court ruled that the law of Rhode Island would apply to interpretation of the insurance contracts, reasoning that the sites involved were operated by a Rhode Island public utility (NEC) and were almost all located in Rhode Island (see OneBeacon [No. 1], 87 Mass. App. Ct. at 420; note 7, infra), and that Rhode Island utility customers had an interest in who would bear the clean-up costs. On appeal, OneBeacon presses for application of Massachusetts law,[3] as the State having the most significant contacts with the primary policies issued to the insured by OneBeacon's predecessor,[4] while London and American

---

[3] All of NEC's claims against OneBeacon were dismissed below. On appeal, OneBeacon argued that, in the event we were to remand any of the claims, Massachusetts law should apply. Century joined OneBeacon's argument as to the J.M. Mills site, discussed infra.

[4] For ease of reference, we refer to OneBeacon and its predecessor collectively as "OneBeacon."

Home argue that New York law should apply to the excess policies issued by them. We resolve the choice-of-law debate in favor of the law of Massachusetts.

1. _Massachusetts choice-of-law principles_. We begin with the conflict-of-law rules of the forum State. Clarendon Natl. Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 495 (2004). Massachusetts has adopted a functional choice-of-law analysis, guided by the Restatement (Second) of Conflict of Laws (1971) (Restatement). Bushkin Assocs. v. Raytheon Co., 393 Mass. 622, 631-632 (1985). When dealing with insurance contracts, we look to Restatement § 193, as well as § 188 and the principles delineated in § 6. Clarendon Natl. Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. at 496.

"Section 193 [of the Restatement] provides that the rights created by a contract of casualty insurance are to be determined by the local law of the State that the parties to the insurance contract understood would be the principal location of the insured risk during the term of the policy, unless some other State has a more significant relationship under the principles of § 6." Ibid. Section 193 further provides that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Restatement § 193 comment b.

The insured risk generally will be located in the State where the policy holder is domiciled.  <u>Ibid</u>.

The identity of the policy holder in this case is not clear cut.  NEC is a Rhode Island public utility.  The first policy issued by OneBeacon, a primary comprehensive general liability policy for the period of October, 1972, to October, 1973, listed the "named insured" and address as follows:

> "Eastern Utilities Associates, EUA Service Corporation, Brockton Edison Company, Blackstone Valley Electric Company and/or any Subsidiary, Associated, Allied or Affiliated Company which is Majority owned and now existing or which may hereafter appear.  P.O. Box 2333, Boston, Massachusetts."[5]

NEC contends that its predecessor, Blackstone Valley Electric Company (BVEC), headquartered for many years in Providence, Rhode Island, should be considered the insured risk, since BVEC is identified in the policy as a named insured.  NEC additionally points to language in the OneBeacon policy providing that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability."

---

[5] OneBeacon issued thirteen primary policies to Eastern Utilities Associates and its operating companies covering the period of October, 1972, to January 1, 1985.  Blackstone Valley Electric Company (BVEC) was NEC's predecessor.  The first OneBeacon policy for 1972 covered Brockton Edison Company and BVEC, with Fall River Electric Light Company and Montaup Electric Company added to the coverage in 1973.  Fall River Electric Light Company and Montaup Electric Company are located in Massachusetts.

OneBeacon counters that Eastern Utilities Associates (EUA), a Massachusetts business trust that owned the stock of BVEC and the other subsidiaries listed in the policy at the time,[6] should be deemed the insured risk, since EUA and EUA Service Corporation (EUA Service) procured coverage with OneBeacon for all its companies, under a single policy, in order to provide uniformity.  It is undisputed that EUA, along with EUA Service and the entities other than BVEC that were covered by the policies, were domiciled in Massachusetts, as were the insurance agent and OneBeacon.

At first blush, Rhode Island might seem the obvious place of the insured risk, given the location of NEC and the affected sites there.[7]  But while an underlying tort claim might properly be resolved under the laws of the State where the injury occurred, the obligation of an insurer to defend and indemnify against that claim is more appropriately determined by reference to the insurance contract itself and the circumstances of its issuance.  W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. 572, 585-586 (1990).

---

[6] EUA's successor is National Grid USA, a Delaware corporation and a registered holding company, with its principal place of business in Westborough.

[7] We note that part of the so-called Lawn Street site was located in Massachusetts.  See OneBeacon (No.1), 87 Mass. App. Ct. at 421.  According to NEC's records, BVEC also utilized a site in Attleboro, referred to as Mendon Road, that is not a part of this action.

In W.R. Grace & Co. v. Hartford Acc. & Indem. Co., supra, W.R. Grace & Co. (Grace) was a New York-based conglomerate with divisions located in various States.  Grace had procured the relevant insurance contracts in New York, through a New York insurance broker, and had made premium payments to the insurers in New York.  Id. at 575-576.  Faced with the question of insurance coverage for asbestos-related claims arising from the manufacture of Grace's products by one of its divisions located in Cambridge, the Supreme Judicial Court ruled that New York law would govern the insurers' obligations.  Id. at 585.  "Whether . . . there is a duty to defend or to indemnify under a nationwide comprehensive general liability policy as to such a claim should not depend on the law of the jurisdiction governing that particular claim but rather should be determined by the law governing the interpretation of the insurance policy and its issuance."  Id. at 586.

This court reiterated the principle in W.R. Grace & Co. v. Maryland Cas. Co., 33 Mass. App. Ct. 358, 360-363 (1992), a liability insurance case also involving Grace, this time related to environmental claims in connection with one of its divisions located in Woburn.  We determined that the law of New York, where Grace had it principal place of business and where the insurance policies were negotiated and issued, again should apply to the insurance contracts, even though the claims

involved a Massachusetts company that disposed of toxic chemicals, causing injury thereby, exclusively in Massachusetts.

We look, then, to the circumstances surrounding the procurement and issuance of the OneBeacon policies. In so doing, we think it useful to begin with the ownership and managerial structure of the insured. EUA was established as a Massachusetts voluntary trust and owned 95 to 100 percent of the common stock of its operating companies at the time.[8] The companies owned by EUA and covered by the OneBeacon policies were BVEC (NEC's predecessor), Brockton Edison Company, Fall River Electric Light Company, and Montaup Electric Company. All but BVEC were located in Massachusetts, and all were assisted in significant respects by EUA Service, also located in Massachusetts, which supervised their employee benefits and insurance programs, among other things.[9] EUA is listed first in the OneBeacon policies as the named insured, followed by EUA Service, and then followed by the subsidiaries, all of which

---

[8] The structure was described in EUA's 1971 service contract with EUA Service as a "holding-company system."

[9] Also among the description of services listed in the service contract between EUA and EUA Service, as of January, 1971, were accounting; corporate matters including financing, regulation, contracts, claims, litigation and records; data processing; engineering; sales promotion; property; rates; regulatory matters; taxes; and financial and statistical reports.

list a single Boston post office box as their address.[10]  EUA Service negotiated the insurance contracts in Massachusetts through a Massachusetts agent, OBrion, Russell & Co.  The decision to coordinate the insurance coverage for the EUA entities originated with John F.G. Eichorn, the president of EUA and EUA Service.[11]  Given the structure of the companies and the interests that drove the acquisition of the OneBeacon policies, it appears that Massachusetts is the State with the greater connection to the insurance transactions at hand.

Section 188 of the Restatement provides further clarification.[12]  Section 188, which deals with contract disputes, instructs that we apply the law of the State that, with respect to the issues, has the more significant relationship to the transaction and the parties, under the principles set forth in § 6 of the Restatement.  Bushkin Assocs. v. Raytheon Co., 393 Mass. at 632.  Applying the § 188 factors used in determining the choice of law to govern contract rights

---

[10] NEC points out that BVEC incurred the largest premiums for the OneBeacon policy, while OneBeacon counters that EUA's Massachusetts companies, combined, paid the greater share of premiums for the relevant years.

[11] Eichorn also served as president of Montaup Electric Company and vice-president of the remaining three subsidiaries at the time the OneBeacon policies were issued.

[12] When § 193 does not provide a definitive answer, we turn to the principles outlined in Restatement § 188, regarding contracts.  Clarendon Natl. Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. at 496.

"produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and uniformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transactions and the parties." W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. at 586, citing Bushkin Assocs. v. Raytheon Co., 393 Mass. at 631-634 (discussing § 188 factors).

Those factors, again, point predominantly to the law of Massachusetts. According to the record, in 1972, EUA turned to an insurance broker to find comprehensive insurance with the goal of eliminating separate policies for its operating companies and integrating their coverage into a single program, "underwritten as one risk." The stated objective was to provide EUA and its operating companies "with one coordinated insurance program designed to afford broad uniform coverages and limits at the lowest possible costs." To that end, EUA and its operating companies were insured under one policy, for each of the years insured by OneBeacon.

Accordingly, even though EUA's subsidiaries were located in two different States, EUA specifically sought and obtained coverage under a single policy with OneBeacon in order to

promote uniformity among its several companies.  As observed in W.R. Grace & Co. v. Hartford Acc. & Indem. Co., supra at 585, "to obtain uniform and practical coverage nationwide for a multiState corporation . . . , it is desirable that the law of one State govern the interpretation of all [the corporation's] comprehensive general liability insurance policies."  We think the same holds true in this case, where, for example, NEC argues in favor of Rhode Island law, OneBeacon argues for Massachusetts law, and London and American Home argue for New York law.

As a result, despite the fact that the underlying claims involved in this case arose in Rhode Island in connection with a Rhode Island operating company, we believe the insurance contracts as a whole, and the circumstances connected to their issuance, point toward the application of Massachusetts law. One consideration that gives us pause, however, is the fact that NEC is a public utility.  As the judge observed, Rhode Island ratepayers have potential economic interest in application of Rhode Island law, particularly as to who will bear the cost for remedial efforts at the Rhode Island properties.

Nevertheless, protection of justified expectations in the issuance of insurance contracts will tip the scale when other factors do not point to a clear choice of law.  "Where relevant contacts and considerations are balanced, or nearly so, we are inclined to resolve the choice by choosing that law 'which would

carry out and validate the transaction in accordance with intention, in preference to a law that would tend to defeat it.'"  Bushkin Assocs. v. Raytheon Co., 393 Mass. at 636, quoting from Boston Safe Deposit & Trust Co. v. Paris, 15 Mass. App. Ct. 686, 691 (1983).

We conclude that the intention of the parties to the OneBeacon insurance contracts was uniformity of coverage, so that the operations of multiple companies were insured as a single risk under a single policy, at a reduced cost.  We think application of Massachusetts law provides the uniformity that was sought by EUA and its operating companies when they contracted together for comprehensive insurance coverage.

For the reasons set forth above, we also reject the arguments of London and American Home that New York law should apply to the insurance contracts those companies issued to NEC. In light of our analysis, the fact that the excess policies issued by those insurers were written in New York is insufficient to outweigh the considerations in favor of Massachusetts law.  Moreover, where multiple policies issued by multiple insurers are involved, the Supreme Judicial Court has expressed a preference that the law of one State govern their interpretation.  W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass at 585.

2.  Application of Massachusetts substantive law.

Application of Massachusetts substantive law, rather than that of Rhode Island, changes our prior interpretation of the relevant policies in two respects.[13]  First, Massachusetts and Rhode Island substantive law differ with regard to the interpretation of the "sudden and accidental release" exception to an insurance contract's pollution exclusion.  The issue affects the coverage determinations as to the J.M. Mills site, a landfill owned by a third party that received contaminated waste from NEC.[14]  As discussed in OneBeacon (No. 2), we concluded that application of Rhode Island law raised a question of fact as to whether the release of contaminants at the J.M. Mills landfill was sudden and accidental, Rhode Island construing the phrase to mean "unintended and unexpected."

By contrast, Massachusetts cases interpret "sudden and accidental" to connote a temporal element, so that only an abrupt release of pollutants will fall within the exception.  See, e.g., Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 407 Mass. 675, 679-681 (1990); Polaroid Corp. v. Travelers

_____

[13] The insurers made no argument regarding the applicability of Rhode Island law with respect to some of the issues discussed in OneBeacon (No. 2).  As to those issues, our application of Rhode Island law in OneBeacon (No. 2) remains undisturbed, as the arguments are waived.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[14] For further background on the J.M. Mills site, see OneBeacon (No. 1), 87 Mass. App. Ct. at 423-424.

Indem. Co., 414 Mass. 747, 751-752 (1993).  It follows that, under Massachusetts law, the question whether NEC took reasonable steps in arranging for the safe disposal of its wastes at the J.M. Mills site, and whether the discharge of contaminants there was thus unexpected or unintended, is not material.

On the undisputed facts, the release of pollutants at the J.M. Mills landfill cannot be characterized as sudden and accidental, as that term is construed under Massachusetts law, and so does not fall within the exception to the pollution exclusion of the relevant policies.  Accordingly, OneBeacon, Century, and American Home were properly granted summary judgment in their favor under the pollution exclusion in their respective policies, as to the J.M. Mills site.

Second, our ruling that Massachusetts substantive law should apply to all of the insurance policies issued for NEC affects, in turn, the allocation of damages in the jury's verdicts against London and Century regarding the Tidewater site.[15]  Massachusetts, like New York, has adopted pro rata allocation of damages, and does not utilize the all sums approach to coverage that the policyholder would enjoy under Rhode Island law.  See, e.g., Boston Gas Co. v. Century Indem.

---

[15] The Tidewater site was used as a manufactured gas plant and power plant.  For further background on the Tidewater site, see OneBeacon (No. 1), 87 Mass. App. Ct. at 420-421, 424.

Co., 454 Mass. 337, 360-366 (2009); New England Insulation Co. v. Liberty Mut. Ins. Co., 83 Mass. App. Ct. 631, 635-638 (2013). We must therefore reverse so much of the final judgment as determines damages against London and Century[16] with respect to the Tidewater site, and remand for further proceedings to determine the proper allocation of damages in accordance with Massachusetts law.

Conclusion. The following text shall supersede the final paragraph of OneBeacon (No. 1), 87 Mass. App. Ct. at 436-437: It was error (a) to grant summary judgment in favor of Century and London on statute of limitations grounds with respect to their duty of indemnification for Hamlet Avenue and PWSB; and (b) to apply Rhode Island law rather than Massachusetts law in construing the terms of the insurance contracts. Accordingly, we reverse so much of the final judgment and declaratory decree as (a) declares that Century and London have no duty to indemnify NEC with respect to claims or liabilities at Hamlet Avenue and PWSB and dismisses those claims; and (b) allocates damages against Century and London pursuant to the verdicts in the trial regarding the Tidewater site. We remand the matter of

---

[16] Although Century advanced no argument that Rhode Island law should not apply at the trial regarding the Tidewater site, London argued that a pro rata approach to damages, rather than Rhode Island's all sums approach should have been applied in assigning the damages awards on the jury's verdicts in that trial. Therefore, in providing a remedy to London, the award to Century is necessarily included in our remand.

the damages awards in that trial to the Superior Court to determine an allocation of damages on a pro rata basis, pursuant to Massachusetts law.  We vacate so much of the final judgment and declaratory decree as dismisses with prejudice NEC's claims as to High Street, Pond Street, and Exchange Street, and the judgment shall be modified to dismiss those claims without prejudice.  In all other respects, the final judgment and declaratory decree is affirmed.  The orders denying Century's motion for judgment notwithstanding the verdict or new trial and London's motion for judgment notwithstanding the verdict are affirmed.  The order denying London's motion for new trial and to alter or amend the judgment is affirmed as to the request for new trial and reversed as to the request to alter or amend the judgment.

<u>So ordered</u>.