Curran, Dennis J., J.
Introduction
This case presents an insurance coverage dispute which, reduced to its essence, triggers the question of the allocation of risk of loss in a construction site accident caused by defective rental equipment.
NES, an equipment supply company, leased a “Sky-lift” scissor lift and boom to Shepardville Construction Company for a construction project in Connecticut. NES required that, for all rentals of equipment, Shepardville provide insurance for NES and name it as an additional insured on a commercial general liability policy that Acadia Insurance Company had issued to Shepardville and its parent company.[1] In November 2011, two construction workers were injured when the scissor lift that NES leased to Shepard-ville unexpectedly collapsed due to a defective bolt.[2] The workers sued NES and others in Connecticut, alleging the lift was defective and had not been properly inspected, tested, and put into operations by trained users.[3] The complaint did not name Shepard-ville as a defendant and alleged no fault on its part. Acadia refused to defend NES, disclaiming coverage of damages related to Shepardville’s use of the lift. Ultimately, NES settled the underlying suit with the injured workers for $900,000.
NES seeks summary judgment in this breach of contract and declaratory judgment action, claiming that Acadia had a duty under the policy to defend or indemnify NES for the claims of damages against it in the underlying action. Acadia opposes this effort and instead, has filed a cross motion for summary judgment, arguing that NES did not qualify as an additional insured under the policy because Shepardville was not a defendant in the underlying action and was not at “fault.” It also claims that there was no written contract or agreement between NES and Shepardville to provide insurance coverage.
For the following reasons, NES’s motion for summary judgment is ALLOWED in part and DENIED in part, and Acadia’s motion is DENIED.
I. BACKGROUND
A. NES’s Dealings with Shepardville
NES began renting equipment to Shepardville and/or its affiliate, Shawnlee Construction Company in Massachusetts, in 2006.[4] As with most customers, NES commenced this relationship with an agreement to rent equipment at its established prices and subject to specific terms and conditions. In July 2006, Shepardville signed a “Credit Application,” which provided, in relevant part:
Insurance: Customer shall be responsible for carrying commercial general liability including a waiver of subrogation, with limits not less than $1,000,000 [e]ach Occurrence and $2,000,000 in the aggregate including products and completed operations as well as property insurance covering the equipment rented. Such coverage shall name the Company as an additional insured, covering all losses and damages. Such coverage shall be endorsed to provide coverage on a direct primary basis over other valid and collectible insurance. Customer will provide Company with certificates of insurance evidencing the current coverage in types and amounts and from companies satisfactory to Company. These insurance requirements are intended to cover and indemnify obligations lessors may have to the Company under this contract. Customer hereby assigns to Company all proceeds from such insurance, conveys an equitable lien in said proceeds, and directs any insurer directly to pay such proceeds to Company and authorizes Company to endorse any drafts for checks for such proceeds.
The specific indemnity terms were further spelled out in a course of dealings between the parties, such as written agreements and delivery manifests for mul *631 tiple rentals over the years. On a standard rental, Shepardville would receive both a rental agreement, which it would sign, and a delivery manifest, with NES’s terms and conditions, including indemnity, printed on the reverse side of the document. The document stated, in relevant part:
3. Customer Obligations
c. Insurance. Customer will provide the company with certificate of insurance evidencing the following forms of coverage with insurance companies satisfactory to the Company.
i). Customer is responsible for carrying commercial general liability insurance, with limits not less than $1,000,000 [e]ach Occurrence and $2,000,000 in the aggregate for bodily injury and third party property damage including products and completed operations. Such coverage shall include a waiver of subrogation and name the Company as an additional insured. Such coverage shall be endorsed to provide coverage on a primary basis over other insurance.
[[Image here]]
19. Sale of Equipment
Buyer shall fully indemnify and hold and save Seller harmless against, any and all claims, losses, damages, liabilities, costs or expenses of any kind incurred by Seller for any reason, including as a result of property damage or bodily injures or death, relating to, arising out of, sustained or resulting from, the ownership, operation, sale, use, testing, or handling the Equipment.
20. Indemnity; Assumption of Risk
Customer agrees to fully indemnify and hold harmless the Company . . . for any and all bodily injury, death, destruction, property damage, or any other cost, damages or loss, regardless of whether such injury ... is caused in whole or in part by negligence, which in whole or in part, arise out of, result from, or relate to the use, operation, condition, or presence of the Equipment by Customer or condition or presence of the Equipment with Customer . . . Customer, on behalf of itself and all Persons at Risk, accepts and fully assumes any and all risks and the possibility of possible injury, death, disability, property damage or loss resulting from the operation of the Equipment and hereby agrees to fully indemnify and hold harmless the Company...
23. Electronic Signature and Delivery of Agreements
Customer acknowledges and agrees that this Agreement, Rental Agreements, Condition and Delivery Reports and other agreements between the Customer and Company may be executed and delivered by means of electronic signatures, electronic delivery . . . Customer agrees that it shall not assert as a defense in any action between Customer and Company that any such electronic action or document is not valid as not representing the intent of the parties.
Upon delivery of the lift at issue, Shepardville received and signed the rental agreement electronically, on a portable hand-held unit.[5] The signature signified Shepardville’s agreement to accept the equipment, its rental contract terms and conditions, and further acknowledged delivery of the equipment. It also received the delivery manifest.[6]
With each rental, NEIS verified that the insurance coverage was in place by requiring the customer to produce certificates of insurance.[7] Just as on many prior occasions, Roblin Insurance Company verified coverage and issued a certificate of insurance to NES dated November 23, 2011 for the lift rental. The certificate expressly confirmed primary coverage, by stating that:
NES Rentals is named as additional insured with regard to all coverage except [w]orkers [c]ompensation. The coverage provided is primary over other valid and collectible coverage.
B. The Acadia Policy
Under a General Liability Expansion Endorsement, Paragraph G, Acadia’s insurance policy states: ADDITIONAL INSURED—LESSOR OF LEASED EQUIPMENT. The following is added to SECTION II—WHO IS AN INSURED, Paragraph 2:
g. Any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as additional insured on your policy.
(1) Such person or organization is an additional insured only with respect to liability for “bodily injury,” “property damage” or “personal and advertising injury” caused in whole or in part, by your maintenance, operation or use of equipment leased to use by such person or organization.
The policy also contained a “Contractual Liability” exclusion in section 2(b), which stated that the insurance did not apply to “ ‘[bjodily injury’ or ‘property-damage’ for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.” The exclusion contains an exception for “liability of damages . . . [a]ssumed in a contract or agreement that is an ‘insured contract,’ provided the ‘bodily injury’ . . . occurs subsequent to the execution of the contract or agreement.” Section 9(f) further defines an “insured contract” as “[t]hatpart of any . . . contract or agreement pertaining to your business ... under which you assume the tort liability of another party for ‘bodily injury’ ... to a third party or organization.”
*632 C. NES’s Request for Coverage from Acadia
The construction workers (the underlying plaintiffs) filed their lawsuit on or about January 18, 2011. NES gave a timely notice of the lawsuit to Acadia and Shepardville and made a demand that Acadia acknowledge its “primary” coverage of NES and pay for all costs of defense. More than a year after suit, and after several written demands, Acadia denied coverage. As reason for its denial, Acadia maintained the position that for the policy’s additional insured coverage to apply, the underlying action must allege liability for bodily injury proximately caused, in whole or in part, by Shepardville’s conduct. Acadia stated that the complaint contained no such allegations.
Due to the risk of exposure estimated in excess of $6,000,000 in the underlying case, NES and other defendants agreed to mediate. NES invited Acadia to participate in the mediation and, if the parties were able to come to agreement, pay defense costs and part, or all, of any settlement. On repeated occasions, Acadia denied its duty to defend and refused to participate in the mediation.
As a result of the mediation, NES settled the case for $900,000, without Acadia’s participation. NES also incurred legal fees and other expenses to defend in the underlying case.
II. DISCUSSION
Generally
Summary judgment is appropriate if the moving party can prove that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. Jupin v. Kask, 447 Mass. 141, 143 (2006) (citation omitted). Where, as in this case, both sides have filed motions for summary judgment, the court adopts a dual perspective and, for purposes of each motion, views the facts in the light most favorable to the non-moving party. Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998).
A. Choice of Law
Before turning to the merits of the parties’ respective positions, we must first identify the applicable substantive law. We employ the conflict of laws rules of Massachusetts, the forum state, to determine which state’s law applies. Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. 492, 495 (2004). Massachusetts has adopted a functional choice-of-law analysis, guided by the Restatement (Second) of Conflict of Laws. OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 90 Mass.App.Ct. 123, 125 (2016) (citation omitted). “Section 193 [of the Restatement] provides that the rights created by a contract of casualty insurance are to be determined by the local law of the (s)tate that the parties to the insurance contract understood would be the principal location of the insured risk during the term of the policy, unless some other [s]tate has a more significant relationship!.]” Id. (alteration in original). The Restatement further provides that “(t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state.” Id., quoting from Restatement §193 Comment b. “The insured risk generally will be located in the [s]tate where the policy holder is domiciled.” Id.
NES argues that Connecticut law should govern this action. It asserts that the NES lease was agreed upon and signed in Connecticut; the lift equipment was delivered in Connecticut for Shepardville’s use on a project solely in that state; the underlying suit was brought in Connecticut court; the defense of that lawsuit and the duty to defend involved conduct which occurred in Connecticut and the settlement of the underlying case and payments to the plaintiffs occurred in Connecticut.
Acadia counters that Shepardville managed its business operations from its headquarters in Plain-ville, Massachusetts. Moreover, the negotiation and procurement of liability insurance for Shepardville also occurred in Massachusetts with the assistance of a Massachusetts insurance agent.
Our courts agree that “(w]hether . . . there is a duty to defend or to indemnify under a nationwide comprehensive general liability policy as to such a claim should not depend on the law of the jurisdiction governing that particular claim],] but rather should be determined by the law governing the interpretation of the insurance policy and its issuance.” W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. 572, 586 (1990); see also OneBeacon Am. Ins. Co., 90 Mass.App.Ct. at 126-27. “Such a result produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and uniformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the [s]tate which, as to the legal issues involved, has the most significant relationship with the transaction and the parties.” W.R Grace & Co., 407 Mass. at 586. Massachusetts is the state that has the “most significant relationship” concerning the “interpretation of the insurance policy and its issuance,” see W.R. Grace, 407 Mass. at 585-86, and this state’s substantive law governs this action.
II. Merits of the Parties’ Contentions
1. Coverage of NES Under the Additional Insured Endorsement
Under the policy’s additional insured coverage, NES is “an additional insured only with respect to liability for ’’bodily injuiy . . . caused in whole or in part by [Shepardville’s] maintenance, operation or use of equipment leased to [Shepardville by NES]." Acadia argues that for this paragraph to require it to defend *633 Shepardville, the underlying complaint must have alleged that Shepardville’s acts or omissions proximately caused the workers’ injuries. NES argues that the term “use” as applied in the policy, requires only that the injuries occurred while the equipment was being used by Shepardville.
Massachusetts law provides that interpretation of an insurance policy and application of policy language to known facts present questions of law appropriate for summary judgment. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003). “Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.” Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (internal quotations and citation omitted). A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced according to its terms. Id, We read the policy as written, and are not at liberty to revise or change its provisions. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997) (citation omitted). Where the policy is ambiguous, doubts regarding the meaning of any ambiguous words or provisions must be resolved against the insurer and an insured is entitled to the most favorable interpretation of the policy language. Cody, 387 Mass. at 146. Exclusionary clauses must be strictly construed against the insurer, so as not to defeat any intended coverage or diminish the protection purchased by the insured. MacArthur v. Massachusetts Hosp. Serv., Inc., 343 Mass. 670, 672 (1962). When construing the language of an insurance policy, it is appropriate to consider whether a reasonable insured, reading the relevant policy language, would expect to be covered. Hakim, 424 Mass, at 282.
In light of this background, we agree with NES’s position. Despite what Acadia seems to suggest, in order to give rise to the duty to defend, “the underlying complaint need only show, through general allegations, a possibiliiy that the liability claim falls within the insurance coverage.” Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010). “There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Id. Here, the complaint alleged that defendant Erland in the underlying action “had delegated certain aspects of work it committed to undertake under its contract with the [s]tate of Connecticut to [Shepard-ville],” and that Shepardville “had in turn delegated some of the work it undertook to the co-[d]efendant Empire.” The complaint further stated that NES failed adequately to inspect, maintain, and repair the lift “prior to delivering [it] to Shepardville for use on the construction site.” Based on the broad definition of the term “use,” Acadia could not have determined reasonably that the allegations in the underlying complaint were patently outside the policy’s coverage. See Commerce Ins. Co. v. Ultimate Livery Serv., 452 Mass. 639, 653 n.15 (2008) (‘The term ‘use’ must be understood in its most comprehensive sense; and the term is not confined [to operation] but extends to any activity utilizing the insured [equipment] in the manner intended or contemplated by the insured”).
Moreover, none of the cases that Acadia cites in support of its argument compel the conclusion that Acadiahad no duly to defend NES in the underlying case. The policy at issue here does not contain any limiting language involving Shepardville’s negligence that required NES to have coverage as an additional insured. See Pro-Con, Inc. v. Interstate Fire and Cas. Co., 794 F.Sup.2d 242, 255 (D.Me. 2011) (internal quotations and citation omitted) (“[T]he fact that an accident is not attributable to the named insurance’s negligence is irrel-evantwhen the additional insured endorsement does not purport to allocate or restrict coverage according to fault” (alteration and emphasis in original)). The cases Acadia relies upon interpret the requirement that “bodily injury be caused ‘in whole or in part’ by acts or omissions of the named insured,” words that are commonly construed as limiting coverage to situations involving the named insurance’s negligence. Consolidation Coal Co. v. Liberty Mut. Ins. Co., 406 F.Sup. 1292, 1298 (W.D.Pa. 1976). Here, the policy says, in no uncertain terms, that NES is covered if the claims were caused by Shepardville’s “use, operation or maintenance” of the equipment, making it clear that Shepardville’s negligence is not a prerequisite to the duty to defend.
If Acadia had intended to limit coverage under the additional insured endorsement to those situations in which an added insured could obtain coverage only when the named principal insured was negligent, it was “free to draft a policy with qualifying language that expressly implemented that intention.” Merchants Ins. Co. of New Hampshire, Inc. v. United States Fid & Guar. Co., 143 F.3d 5, 10 (1st Cir. 1998); see also, Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 13 (1989). Indeed, companies commonly issue additional insured endorsements that specifically limit coverage to situations where liability arises out of the named insured’s negligence. See, e.g., Harbor Ins. Co. v. Lewis, 562 F.Sup. 800, 801 (E.D.Pa. 1983) (additional insureds covered “only to the extent of liability resulting from occurrences arising out of negligence” of the named insured); Consolidation Coal Co., 406 F.Sup. at 1294 (additional insured covered “only with respect to acts or omissions of the named insured”); Maryland Cas. Co. v. Nationwide Ins. Co., 65 Cal.App. 4th 21, 28 (1998) (additional insured covered “only to the extent [the additional insured] is held liable for [the named insured’s] acts or omissions arising out of and in the course of operations”). Acadia chose not to include such “clear and unmistakable language” in its endorsement, see Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 322 (1995), and cannot now seek to diminish the protection that its policy offered to NES.
*634 2. Shepardville’s Contractual Obligations
Acadia further attempts to disclaim coverage by maintaining that to ñt within the exception to the policy’s contractual liability exclusion, NES must prove that an executed agreement by which Shepardville agreed to assume tort liability existed before the accident. Specifically, it claims that the electronic document generated at the time of the lift’s delivery to the project site does not translate into Shepardville’s agreement to assume liability, and that the delivery manifest handed to the receiving person did not include the indemnity terms. This contention is unfounded. Even if we assume that the delivery manifest at issue failed to include the terms and conditions, which the Court does not, a contract is enforceable when the parties agree to the material terms and intend to be bound by that agreement. See Situation Mgmt Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000); McCarthy v. Tobin, 429 Mass. 84, 87 (1999) (“The controlling fact is the intention of the parties”). The material terms do not need to be “precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.” Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass.App.Ct. 416, 421 (2002) (internal quotations and citation omitted). Here, although the rental was processed electronically on a hand-held portable device, the terms and conditions were established previously in other rental agreements and the initial credit application. It is clear that, from the course of prior dealings, the parties understood that there was a contract for indemnity and intended to be bound by it. See Tiffany v. Sturbridge Camping Club, Inc., 32 Mass.App.Ct. 173, 175 n.4 (1992), quoting Pittsfield & N. Adams R.R v. Boston & Albany R.R., 260 Mass. 390, 398 (1927) (‘There is no surer way to find out what the parties meant than to see what they have done”).
This interpretation finds further support in the language of the Certificate of Liability Insurance that Shepardville produced to NES. The certificate states that NES is named as an additional insured with regard to all coverage except worker compensation, and the provided coverage is primary over other valid and collectible coverage. While the certificate of insurance “is not part of the contract of, or necessary to, the insurance,” it does serve “as evidence of the insurance.” Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 203 (1937); see also, 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 122 (2nd Cir. 2011).
In sum, the intent of NES and Shepardville is clear: in exchange for a lower price on the rented equipment, Shepardville agreed to assume the risk of liability in the case of claims for injuries resulting from the use, operation or maintenance of NES’s machinery. Such risk allocation agreements “are common in the construction industry and are widely-regarded as a ‘reasonable accommodation’ between parties to a commercial agreement . . . They have the advantage of allowing owners, contractors, and subcontractors to shift the significant and, oftentimes, unforeseeable risks inherent in construction work.” MacGlashing v. Dunlop Equip. Co., 89 F.3d 932, 939 (1st Cir. 1996). Such agreements “also permit the equipment needed to complete construction jobs to be obtained at lower rates because the lessors of such equipment can exclude the cost of insuring against accident-related damages from the equipment price.” Id. We thus find that the policy’s contractual indemnification exclusion does not apply to Shepardville’s agreement to indemnify NES.
For these reasons, we rule, as a matter of law, that Acadia had a duly to defend NES against the underlying plaintiffs claims and breached its duly. However, Acadia’s duly to defend does not automatically mean that Acadia must indemnify NES for the settlement amount. See Polaroid v. Traveler’s Indem. Co., 414 Mass. 747, 760 (1993). The issue of damages stemming from Acadia’s duty to defend involves material issues of fact and cannot be determined as a matter of law on the record before this Court. Accordingly, to the extent that NES’s motion for summary judgment asks that the Court enter an order directing Acadia to reimburse NES for attorneys fees and costs incurred in the defense in the underlying matter and the amount of the settlement, NES’s motion must be DENIED.
ORDER
For these reasons, the plaintiff NES Equipment Services Corporation’s motion for summary judgment is ALLOWED in part and DENIED in part, and the defendant Acadia Insurance Company’s cross motion for summary judgment is DENIED.

 Acadia maintains a place of business in Marlborough, Massachusetts and has its main office in Westbrook, Maine. It is licensed to conduct business in Massachusetts. Firemen’s Insurance Company of Washington, D.C. is an insurance company that is a part of a subsidiary, or is affiliated with Acadia. It appears that Firemen’s issued the policy at issue here. For the purposes of this opinion, we refer to both insurance companies as “Acadia.”

 At the time of the accident, the injured workers were employed by Empire Construction Special Projects, LLC, Shepardville’s sub-subcontractor.

 The action also named as co-defendants Skyjack, the lift’s manufacturer, Erland, the general contractor on the project and Shepardville’s subcontractor, and Empire.

 NES is incorporated in Delaware, with its principal business in Illinois and offices in Massachusetts and Connecticut. At all relevant times, Shepardville was in the business of performing framing and finish carpentry for construction projects in New England, New York, New Jersey, Pennsylvania, Maryland, and Washington, D.C. Its business operations were managed from its headquarters in Plainville, Massachusetts. Plainville is also the location from which Shepardville’s risk management program is administered.

 The screen on the hand-held unit did not contain the terms and conditions.

 The parties dispute whether the delivery manifest in this rental had the terms and conditions printed on the back of the document.

 The certificates of liability insurance were issued by Roblin Insurance Company in Needham, Massachusetts.