COMERICA BANK & TRUST, N.A. vs. BROWN & ROSEN, LLC, 101 Mass. App. Ct. 574

 
 COMERICA BANK & TRUST, N.A., personal representative, [Note 1] & another [Note 2] vs. BROWN & ROSEN, LLC, & another. [Note 3]

101 Mass. App. Ct. 574
 May 6, 2022 - August 30, 2022

Court Below: Superior Court, Suffolk County
Present: Desmond, Ditkoff, & Walsh, JJ.

 

No. 21-P-897.

Practice, Civil, Choice of forum, Motion to dismiss. Conflict of Laws. Attorney at Law, Malpractice. Assignment.

In a civil action asserting a claim of legal malpractice, which the plaintiffs purported to hold by virtue of an assignment from the defendants' former clients, a Superior Court judge erred in granting the defendants' motion to dismiss the original complaint on the ground that Minnesota law did not permit assignment of such a claim, where the issue of assignability was governed by Massachusetts law, in that application of Massachusetts law would protect the justified expectations of the parties regarding the assignability of a legal malpractice claim, while application of Minnesota law would be inconsistent with those expectations; and in that application of Massachusetts law served Massachusetts public policy (i.e., Massachusetts had substantial interest in regulating the conduct of an attorney licensed in Massachusetts and in enforcing the ethical and professional duties that the Commonwealth imposes on its attorneys), while application of Minnesota law did not serve the public policy underlying Minnesota's prohibition on such assignments (i.e., upholding the integrity of the legal profession in Minnesota and protecting the attorney-client relationship). [578-583]

Civil action commenced in the Superior Court Department on March 12, 2020. 

 A motion to dismiss was heard by Michael P. Doolin, J.

 Timothy Wilton for the plaintiffs.

 M. Gregory Simpson, of Minnesota, for the defendants.

 WALSH, J. The plaintiffs appeal from a judgment of dismissal entered in the Superior Court that followed the allowance of a motion to dismiss their original complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The complaint asserts a claim of legal malpractice, which the plaintiffs purport to hold by virtue 

 Page 575 

of an assignment from the defendants' former clients. The principal issue raised on appeal is whether the assignment of the legal malpractice claim is governed by Massachusetts or Minnesota law, the former allowing such assignments and the latter prohibiting them. Because Massachusetts has the most significant relationship to the assignability of the legal malpractice claim, we conclude that Massachusetts law applies and reverse the dismissal of the plaintiffs' original complaint. [Note 4]

 Background. "We summarize the facts alleged in the plaintiffs' complaint which, for purposes of our review of the defendants' motion to dismiss, we accept as true, construing all reasonable inferences from those facts in the plaintiffs' favor." Resolute Mgt. Inc. v. Transatlantic Reinsurance Co., 87 Mass. App. Ct. 296, 297 (2015).

 1. The Deliverance Recordings. Prince Rogers Nelson (the recording artist known as "Prince") died intestate in Minnesota on April 21, 2016. Following his death, George Ian Boxill, a sound engineer who worked with Prince between 2004 and 2008, sought to commercialize five previously unreleased Prince songs in his possession, collectively known as the "Deliverance Recordings." [Note 5] Toward this end, Boxill, a California resident, partnered with Rogue Music Alliance, LLC (RMA), a Washington-based music distribution company. Boxill and RMA then retained Attorney Christopher L. Brown, a Massachusetts-based entertainment lawyer, "for the express purpose of providing legal advice regarding intellectual property and ownership issues pertaining to the release of the Deliverance Recordings." 

 2. Attorney Brown's legal advice. On July 7, 2016, Attorney Brown wrote an opinion letter advising his clients that Boxill had jointly authored the Deliverance Recordings, jointly owned the copyright to them, and could distribute the recordings for commercial gain subject to an obligation to pay the Prince estate its share of royalties. [Note 6] The plaintiffs claim that the defendant acted negligently by failing to contact anyone from the Prince estate 

 Page 576 

regarding the ownership of the Deliverance Recordings, failing to speak directly with Boxill to ascertain how the recordings were created, and failing to adequately investigate the matter to determine if his clients had any rights to the music.

 Based on Attorney Brown's advice, Boxill and RMA formed Deliverance, LLC, in California to market and release the recordings. The plaintiffs' original complaint alleged that the operating agreement for Deliverance, LLC, contains a provision providing compensation for Attorney Brown's legal services in the form of a percentage of the sales. Upon learning of the plan to release the recordings, Comerica Bank & Trust, N.A. (Comerica), as the personal representative of the Prince estate, and Paisley Park Enterprises, Inc. (Paisley), a corporation owned by the Prince estate, sent a cease-and-desist letter to Attorney Brown in his Massachusetts office disputing Boxill's joint ownership of the copyright to the Deliverance Recordings. That same day, Attorney Brown sent a letter to RMA's general counsel reiterating his opinion that Boxill jointly owned the rights to the recordings. Attorney Brown maintained this position even after the Prince estate sent him a copy of a 2004 confidentiality agreement signed by Boxill, providing that any recordings and other materials created from Boxill's work with Prince "shall remain Paisley's sole and exclusive property, shall not be used by [Boxill] in any way whatsoever, and shall be returned to Paisley immediately upon request." [Note 7]

 3. The Minnesota litigation. On April 14, 2017, Comerica and Paisley sued Boxill in Minnesota State court, alleging a breach of the 2004 confidentiality agreement and several related intellectual property claims. They also requested preliminary injunctive relief to prevent the release of the recordings. In response, Attorney Brown advised Boxill to remove the case to Federal court to delay any imposition of injunctive relief. He also advised Boxill to move forward with the release of the recordings. The removal gave Boxill, RMA, and Deliverance, LLC, an opportunity to distribute the Deliverance Recordings, using Prince's name and other protected intellectual property to market and promote their release.

 The day after Boxill removed the case, a Federal judge 

 Page 577 

enjoined Boxill from using or selling the Deliverance Recordings. [Note 8] The Prince estate then amended its complaint adding RMA and Deliverance, LLC, as defendants. Attorney Brown represented Boxill, RMA, and Deliverance, LLC, in the Minnesota litigation until January 9, 2018. Following Attorney Brown's withdrawal, the Prince estate added Brown & Rosen, LLC (Brown & Rosen) as a defendant in the Minnesota litigation alleging tortious interference with a contractual right and indirect copyright infringement. [Note 9] A Federal judge ultimately dismissed the claims against Brown & Rosen for lack of personal jurisdiction.

 In April of 2018, the Prince estate compelled arbitration of its breach of contract claim against Boxill under the 2004 confidentiality agreement. After three days of evidentiary hearings, Boxill was found liable for committing a breach of the 2004 agreement, and the Prince estate was awarded $3,960,287.65, including costs and fees. Judgment on the arbitration award entered in the United States District Court for the District of Minnesota on April 9, 2019.

 4. Assignment of the legal malpractice claim. Following the arbitration award, Boxill, RMA, and Deliverance, LLC, extended an offer of judgment to Comerica and Paisley, pursuant to Fed. R. Civ. P. 68 (2019), to settle the additional claims in the Minnesota litigation. The Prince estate accepted the offer, and judgment entered on the remaining claims. As part of the settlement, Boxill, RMA, and Deliverance, LLC, executed a "Confidential Settlement Agreement" that assigned to the Prince estate "all claims they possess which relate to or arise from legal advice [and] services provided by [Brown & Rosen] and [Attorney Brown]."

 5. The proceedings in the Massachusetts Superior Court. On March 12, 2020, Comerica and Paisley filed suit in the Massachusetts Superior Court asserting that Attorney Brown and his law firm, Brown & Rosen, committed legal malpractice in their representation of Boxill, RMA, and Deliverance, LLC. [Note 10] The defendants moved to dismiss the complaint arguing, among other things, that the assignment of the legal malpractice claim was unenforceable under Minnesota law. See Wagener v. McDonald, 

 Page 578 

509 N.W.2d 188, 193 (Minn. Ct. App. 1993). [Note 11]

 The judge allowed the defendants' motion to dismiss the original complaint pursuant to rule 12 (b) (6), holding that the assignment of the legal malpractice claim was prohibited under Minnesota law. The judge reasoned that Minnesota law governed the assignment because the settlement agreement was executed in Minnesota, and because "Massachusetts does not have a substantial relationship to the [p]laintiffs or the transaction at issue."

 Discussion. 1. Dismissal of the original complaint. "We review the allowance of a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6) de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the nonmoving party's favor." Chang v. Winklevoss, 95 Mass. App. Ct. 202, 210 (2019). To survive a rule 12 (b) (6) motion, the complaint must allege sufficient facts "to plausibly suggest an entitlement to relief." Id., quoting Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842 (2017). Where a complaint presents a conflict of laws, we must determine which State's substantive law governs the issue. See Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 467 (2018). Because Massachusetts is the forum State, we apply its conflict-of-law rules. OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 90 Mass. App. Ct. 123, 125 (2016).

 a. Choice of law. "Massachusetts . . . follows a functional approach to resolving choice of law questions[,] . . . eschewing reliance on any particular choice-of-law doctrine." Conway v. Planet Fitness Holdings, LLC, 101 Mass. App. Ct. 89, 96 (2022), quoting Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 583 (2010). "[I]f [an] agreement [is] silent as to choice of law, the rights of the parties [are] 'determined by the local law of the [S]tate which, with respect to that issue, has the most significant relationship to the transaction and the parties'" (emphasis added). Oxford Global Resources, LLC, 480 Mass. at 467, quoting Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 632 (1985). We weigh various "choice-influencing factors," and rather than "simply adding up [the parties'] various contacts [with each 

 Page 579 

State]," we "focus our attention on the considerations particularly relevant to the case before us." Bushkin Assocs., Inc., supra at 632-634. Our inquiry is guided by the Restatement (Second) of Conflict of Laws (1971); § 6 of the Restatement provides a list of relevant factors, including:

"(a) the needs of the interstate . . . system[], (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

 The defendants urge us to focus on which State has the most significant relationship to the settlement agreement as a whole. They emphasize the contacts with Minnesota, including the fact that the plaintiffs are domiciled in Minnesota [Note 12] and that the agreement to settle the Minnesota litigation was negotiated and executed in Minnesota. Our case law, however, directs our focus to the State with the most significant relationship to the transaction and the parties "with respect to [the] issue" that presents the conflict of laws. Oxford Global Resources, LLC, 480 Mass. at 467, quoting Bushkin Assocs., Inc., 393 Mass. at 632. Here, it is the assignability of legal malpractice claims that presents the conflict of laws. We therefore focus our inquiry on which State has the most significant relationship to the assignability of the legal malpractice claim asserted against Attorney Brown. [Note 13], [Note 14]

 Two considerations are particularly important in the context of 

 Page 580 

a conflict regarding assignability: protecting the justified expectations of the parties and effectuating the policy of the State "with the dominant interest" with respect to the issue of assignability. Restatement (Second) of Conflict of Laws § 208 comment b.

 Applying Massachusetts law would protect the justified expectations of Attorney Brown, his law firm, and his clients. Massachusetts law has long permitted the assignment of legal malpractice claims, see New Hampshire Ins. Co. v. McCann, 429 Mass. 202, 208-209 (1999), and Attorney Brown, as a Massachusetts lawyer practicing in a Massachusetts firm, would reasonably expect that his clients might assign their legal malpractice claims against him. Conversely, when Boxill, RMA, and Deliverance, LLC, retained Attorney Brown and his law firm, they would have been justified in expecting that they would be able to assign any legal malpractice claim that might arise under Massachusetts law to "most efficient[ly] . . . realize the value of [their malpractice] claim" (citation omitted). McCann, supra at 208, 210. Applying Minnesota law would be inconsistent with those justified expectations.

 We turn next to the question of which State has the dominant interest in the application of its rule regarding the assignability of legal malpractice claims. "[T]he interest of a state in having its rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by the rule and upon the relation of the state to the transaction and the parties." Restatement (Second) of Conflict of Laws § 208 comment b. [Note 15] In Minnesota, a cause of action is generally "assignable if it survives the death of the holder and does not arise out of personal injury." Wagener, 509 N.W.2d at 190, citing Minn. Stat. Ann. §§ 573.01-573.02. However, Minnesota prohibits the assignment of legal malpractice claims as a matter of public policy because of the effect such assignments might have on the attorney-client 

 Page 581 

relationship, the legal profession, and the judicial process. Wagener, supra at 191-193 (concluding assignment is incompatible with attorney's duty of loyalty and confidentiality and would generate unjustified legal malpractice litigation).

 Massachusetts, on the other hand, generally permits the assignment of legal malpractice claims "unless some clear rule of law or professional responsibility, or some matter of public policy, necessitates that the assignment should not be enforced." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 647 (2005), quoting McCann, 429 Mass. at 209-210. Assessing the public policy of legal malpractice assignments, the Supreme Judicial Court concluded that "[i]t is farfetched to imagine that a lawyer [would] be discouraged from zealously representing a client out of fear that the client may later offer a malpractice action against the lawyer as a part of the resolution of another case." McCann, supra at 210. The Supreme Judicial Court noted that Massachusetts has "'long abandoned the view that litigation is suspect,' and [has] . . . abolished the rule against champerty" [Note 16] in recognition that an assignment may "provide[] an efficient and reasonable method of disposing of two related legal problems." Id., quoting Saladini v. Righellis, 426 Mass. 231, 234 (1997). The Supreme Judicial Court has rejected the argument that assignment of a legal malpractice claim to one's former adversary in litigation would demean confidence in the legal profession because "[t]he fact that an attorney might be called on to defend against an assigned malpractice claim does not always mean that the attorney's former adversary will compromise the strength of his underlying claim." McCann, supra at 211. In short, the Supreme Judicial Court has concluded that allowing assignment of legal malpractice claims against Massachusetts attorneys promotes transparency and accountability within the legal profession and enables clients to efficiently realize the value of those claims. Id. at 210-212.

 Attorney Brown is a Massachusetts-licensed attorney, and his law firm is a Massachusetts limited liability company. He is authorized to practice law by the Supreme Judicial Court of Massachusetts, see S.J.C. Rule 3:01, as appearing in 478 Mass. 1301 (2018), and his professional duties arise under Massachusetts 

 Page 582 

law, see Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass. App. Ct. 107, 111 (1987) (describing standard of care owed by Massachusetts attorneys). Attorney Brown rendered the legal advice in Massachusetts, and to the extent that his representation involved Minnesota, it was "on a temporary basis," and "[arose] out of or [was] reasonably related to [his] practice in [Massachusetts]." See Minn. R. Prof. Cond. 5.5 (a)-(c). Massachusetts has a substantial interest in regulating Attorney Brown's conduct and in enforcing the ethical and professional duties that it imposes on its attorneys. Public policy is thus served by applying Massachusetts law to enforce the voluntary assignment of the legal malpractice claim asserted against Attorney Brown.

 By contrast, application of Minnesota law in this circumstance does not serve the public policy underlying Minnesota's prohibition on assignment of legal malpractice claims -- upholding the integrity of the legal profession in Minnesota and protecting the attorney-client relationship. See Wagener, 509 N.W.2d at 191-193. On the facts before us, Minnesota's interest in prohibiting this assignment is attenuated. There is no evidence that Attorney Brown regularly practices in Minnesota, and Minnesota has no cognizable interest in regulating the legal profession in Massachusetts.

 Nor will enforcement of the assignment in this case interfere with Attorney Brown's duty of confidentiality or otherwise harm the attorney-client relationship. Boxill, RMA, and Deliverance, LLC, have voluntarily assigned their malpractice claim, and there is no claim of fraud, coercion, or duress. See McCann, 429 Mass. at 210. Moreover, the assignment will not result in a "distasteful role reversal" that will "compromise [the plaintiffs'] underlying claims" in the Minnesota litigation. See id. at 210-211. The plaintiffs' position in the Minnesota litigation was that Boxill, RMA, and Deliverance, LLC, used the plaintiffs' intellectual property without authorization. Their position in the Massachusetts Superior Court action is that Attorney Brown negligently advised his clients to release the Deliverance Recordings and delayed the legal proceedings in order to profit off the recordings financially. By advancing the legal malpractice claim against Attorney Brown, the plaintiffs do not undermine the intellectual property and related claims asserted against Boxill, RMA, and Deliverance, LLC, which were allegedly caused by Attorney Brown's negligent advice.

 Page 583 

 The defendants identify a number of contacts with Minnesota, including that it is the plaintiffs' domicil and that the settlement agreement was negotiated and executed in Minnesota, to resolve the Minnesota litigation. They do not, however, explain how these contacts bear on the parties' justified expectations or the States' relative policy interests regarding the issue of assignability of legal malpractice claims. Cf. Bushkin Assocs., Inc., 393 Mass. at 631-632 (we take "functional choice-of-law approach," and "[w]e do not . . . simply add[] up various contacts").

 The remaining choice-of-law factors identified in § 6 of the Restatement (Second) of Conflict of Laws are either neutral or support application of the Massachusetts law. As the policy of each State is primarily aimed at regulating its own legal profession, the needs of the interstate system are best served by application of the Massachusetts law to enforce the assignment of the malpractice claim. Application of the Minnesota law would serve no valid public policy purpose and would permit the defendants to avoid a lawsuit arising under Massachusetts law. Application of the Massachusetts law would have the additional benefit of promoting "[c]ertainty, predictability, and uniformity of result[s]" because attorneys and their clients can reasonably expect that the assignment of legal malpractice claims against Massachusetts attorneys will generally be enforced in Massachusetts courts "unless some clear rule of law or professional responsibility, or some matter of public policy, necessitates that [it not be]." Otis, 443 Mass. at 647, quoting McCann, 429 Mass. at 209-210.

 As Massachusetts has the most significant relationship to the assignability of the legal malpractice claim asserted against Attorney Brown and his law firm, Massachusetts law governs the issue. [Note 17] Accordingly, we reverse the dismissal of the plaintiffs' original complaint.

 Judgment reversed.

FOOTNOTES
[Note 1] Of the estate of Prince Rogers Nelson. 

[Note 2] Paisley Park Enterprises, Inc. 

[Note 3] Christopher L. Brown. 

[Note 4] The parties dispute the propriety of an attempted amended complaint. Given our conclusion that the original complaint was sufficient, we need not address the status of any subsequent attempts to amend it. See note 11, infra. 

[Note 5] The five songs are "Deliverance," "No One Else," "I Am," "Touch Me," and "Sunrise Sunset." 

[Note 6] Attorney Brown opined that the Prince estate owned ninety percent of the publishing rights and Boxill owned ten percent. With respect to ownership of the master recordings, Attorney Brown opined that Boxill and the Prince estate each owned a fifty percent interest. 

[Note 7] Attorney Brown sent an e-mail message to counsel for Paisley and Comerica after receiving the agreement and "stat[ed] that he had reviewed the [document] but did not agree with the Estate's legal position on the matter." 

[Note 8] The temporary restraining order was converted to a preliminary injunction. 

[Note 9] The Prince estate did not name Attorney Brown as a defendant in the Minnesota litigation. 

[Note 10] The complaint does not allege any malpractice connected with Brown's representation of his clients in the Minnesota litigation. Rather, the allegations concern his negligence in "advising, facilitating and promoting the unauthorized release of the Deliverance Recordings while a lawsuit was pending, with full knowledge of the Confidentiality Agreement in place." 

[Note 11] In response, Comerica and Paisley executed an amended assignment agreement with Boxill, RMA, and Deliverance, LLC, specifically governed by Massachusetts law, which permits such assignments, and then sought to file an amended complaint pleading the existence of the amended agreement. Because we conclude that that original complaint stated a claim upon which relief may be granted, we need not delve into the propriety of the amended complaint or the amended agreement. 

[Note 12] Comerica is acting as a personal representative of the Prince estate, which is being probated in Minnesota. 

[Note 13] "It is well recognized that there is a distinction between the validity of an assignment as between the parties to the assignment agreement[,] and the general assignability of a tort chose in action." Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 864 (D.N.J. 1993). "Whether, and under what conditions, [a tort claim] can be effectively assigned is determined by the local law of the state which has the most significant relationship to the contract and the parties with respect to the issue of assignability" (emphasis added). Restatement (Second) of Conflict of Laws § 208. Cf. Restatement (Second) of Conflict of Laws § 209 (governing choice of law as to issue of validity and effect of particular assignment between parties). 

[Note 14] While §§ 208 and 209 of the Restatement primarily address the voluntary assignment of "contractual right[s] not embodied in a document," the Restatement's introductory note on the topic of assignment indicates that these rules may also be "applicable to assignments of rights of action in tort." Restatement (Second) of Conflict of Laws, introductory note to Topic 2. See Conopco, Inc., 826 F. Supp. at 864-865. 

[Note 15] "To hold a . . . right unassignable, in situations where the contract is silent on the question of assignability, would disappoint the expectations of the assignee. This should not be done unless required by the intensity of the interest of the state with a rule of non-assignability in having its rule applied. Such an interest is particularly likely to exist in situations where the rule of non-assignability is designed for the protection of a limited class of which the person contesting the assignment is a member." Restatement (Second) of Conflict of Laws § 208 comment b. 

[Note 16] "Champerty has been described as the unlawful maintenance of a suit, where a person without an interest in it agrees to finance the suit, in whole or in part, in consideration for receiving a portion of the proceeds of the litigation." Saladini v. Righellis, 426 Mass. 231, 233 (1997). 

[Note 17] The defendants invite us to affirm the dismissal on the alternative grounds of judicial estoppel and the doctrine of in pari delicto. We think "these theories would be best addressed in the trial court in the first instance." von Schönau-Riedweg v. Rothschild Bank AG, 95 Mass. App. Ct. 471, 492 (2019). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.