GANTS, C.J.
*560 **462 The defendant was employed in California by the plaintiff company, which is headquartered in Massachusetts. As a condition of employment, he signed a confidentiality, nonsolicitation, and noncompetition agreement (agreement) that declared that the agreement would be governed by the laws of Massachusetts **463 and that all lawsuits arising from the agreement would be brought in a Massachusetts court. After the employee left to work for a competitor in California, and allegedly violated the nonsolicitation and confidentiality provisions of the agreement in performing his new job, his prior employer filed suit against the employee in the Massachusetts Superior Court. The issue on appeal is whether the judge abused his discretion by allowing the employee's motion to dismiss on the ground of forum non conveniens.
We conclude that the Massachusetts choice of law provision in the agreement is not enforceable, where California substantive law would apply under our choice of law principles, and where the application of Massachusetts substantive law would violate the fundamental public policy of California favoring open competition and employee mobility. We also conclude that the Massachusetts forum selection provision in the agreement does not bar the employee from moving to dismiss on the ground of forum non conveniens. Finally, we conclude that the judge did not abuse his discretion in deciding, after consideration of the relevant private and public concerns, that in the interest of substantial justice this action should be dismissed on the ground of forum non conveniens so that the case can be resolved in a California court.[1]
Background. The plaintiff, Oxford Global Resources, LLC (Oxford), is a recruiting and staffing company that places consultants who have specialized technical expertise with corporate and individual clients. It presently has twenty-four offices throughout the United States and Europe, with three offices in Massachusetts, including its headquarters in Beverly, and four offices in California.[2] Oxford's account managers supervise relationships with Oxford's clients and client managers, and assist Oxford's recruiters and recruiting managers in placing consultants with clients. In its amended complaint, Oxford alleges that it devotes a substantial amount of time and resources in developing the "Oxford Database," a secure database of detailed client information, to which employees have access, with some restrictions.
The defendant, Jeremy Hernandez, was offered an entry-level position as an account manager with Oxford in its Campbell, **464 California, office in May, 2013, and commenced working for Oxford several *561 months later. Before beginning his employment, Hernandez signed an offer letter in which he agreed to "sign and strictly abide by [Oxford's] Confidentiality, Non-Solicitation and Non-Competition Agreement"; he also signed that agreement.
Under that agreement, as to confidentiality, Hernandez agreed, among other things, that he would never, "directly or indirectly, use or disclose to anyone ... any of the Confidential Information revealed to or learned by [him], unless such use or disclosure [was] both consistent with the Company's obligations and for the sole purpose of carrying out [his] duties to the Company." "Confidential Information" is a defined term in the agreement and includes a vast amount of company information, "whether or not meeting the legal definition of a trade secret."[3] As to nonsolicitation, Hernandez agreed that, for twelve months following the termination of his employment, he would not, among other things, solicit or seek to employ or retain the services of any person who was an employee or independent contractor of Oxford within the previous twelve months, or use his knowledge of Oxford's customers and prospective customers to solicit or provide services to those customers or persuade them to reduce their use of services from Oxford.[4] As to noncompetition, the agreement **465 only barred Hernandez from competing with Oxford during his employment with Oxford; it did not prohibit him from working for a competitor after the termination of his employment.
As to choice of law, the agreement provides that "this Agreement will be governed by the laws of Massachusetts, without giving effect to the conflict of laws provisions thereof." As to forum selection, it provides:
*562 "All suits, proceedings and other actions relating to, arising out of or in connection with this Agreement will be submitted to the in personam jurisdiction of the United States District Court for the District of Massachusetts ... or to the courts of the Commonwealth of Massachusetts, if the Federal Court lacks jurisdiction to hear the matter or if Oxford so chooses. Venue for all such suits, proceedings and other actions will be in Massachusetts. Employee hereby waives any claims against or objections to such in personam jurisdiction and venue."
In March, 2016, Hernandez voluntarily terminated his employment with Oxford and, the following month, commenced work as an account manager for MindSource, Inc. (MindSource) -- an Oxford competitor located in Mountain View, California. In November, 2016, Oxford received an anonymous memorandum by mail alleging that Hernandez had "retained proprietary information including call lists, manager names etc. from when he worked at Oxford" and "used th[at] confidential information" at MindSource to solicit clients located in California. The memorandum was accompanied by what appeared to be images of Oxford's "Manager Lead Sheets," which are confidential forms located in the Oxford Database that identify Oxford's client and client manager contacts and prospects, and an image of a message from Hernandez attempting to solicit a former client from Oxford. Oxford alleged that it then came to learn that Hernandez was communicating with a number of Oxford's current and prospective **466 clients and consultants, and sending invitations to others to contact him through a social networking Web site.
In its amended complaint, filed in January, 2017, Oxford alleged that Hernandez violated the agreement when he "misappropriated and disclosed Oxford's trade secrets and/or confidential information, solicited Oxford's customers and consultants, and improperly competed with Oxford on behalf of himself and [MindSource]." The four counts of its amended complaint claim alleged (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with contractual or advantageous relations between Oxford and Oxford's clients; and (4) statutory and common-law misappropriation of Oxford's trade secrets.
Hernandez moved to dismiss the amended complaint on the grounds of forum non conveniens, arguing that the agreement's forum selection provision was "inoperative" and that the interest of substantial justice required that the case be tried in California. Oxford opposed the motion, arguing that the parties had entered into an enforceable agreement that provided that the agreement would be governed by the laws of Massachusetts, and that any disputes arising from that agreement would be litigated in a Massachusetts court.
The judge allowed Hernandez's motion to dismiss on the ground of forum non conveniens and ordered the dismissal of all claims without prejudice. The judge characterized the agreement as a contract of adhesion, finding that "Hernandez had neither the opportunity nor the bargaining power to negotiate over whether California or Massachusetts law would govern his noncompetition, non-solicitation, and confidentiality agreements." Noting our general rule that contracts of adhesion "are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances," McInnes v. LPL Fin., LLC, 466 Mass. 256, 266, 994 N.E.2d 790 (2013), quoting Miller v. Cotter, 448 Mass. 671, 684 n.16, 863 N.E.2d 537 (2007), the judge determined that the agreement's "choice-of-law provision is not enforceable because it would *563 result in substantial injustice to Hernandez by depriving him of the freedom to compete against Oxford in California that is guaranteed under the California law, and it would do so based solely on a contract clause that Hernandez had no meaningful opportunity to negotiate when he was hired." In the absence of an enforceable choice of law provision, the judge reasoned that "the Agreement is therefore governed by California law." Applying **467 California substantive law, he held that, "where a forum selection clause is combined with a choice-of-law provision that would bar a claim or defense in violation of California public policy, the forum selection provision is also 'unenforceable as against public policy.' " See Verdugo v. Alliantgroup, L.P., 237 Cal. App. 4th 141, 154-157, 187 Cal.Rptr.3d 613 (2015). In the absence of an enforceable forum selection provision, the judge weighed the relevant public and private interests and determined that both "strongly favor trial in California." Oxford appealed from the judge's ruling, and we transferred the case to this court on our own motion.
Discussion. "We review a court's 'interpretation of the meaning of a term in a contract,' a question of law, de novo." Balles v. Babcock Power Inc., 476 Mass. 565, 571, 70 N.E.3d 905 (2017), quoting EventMonitor, Inc. v. Leness, 473 Mass. 540, 549, 44 N.E.3d 848 (2016). But we review the allowance of a motion to dismiss on the ground of forum non conveniens for an abuse of discretion. See Gianocostas v. Interface Group-Mass., Inc., 450 Mass. 715, 723, 881 N.E.2d 134 (2008). Oxford objects to the judge's characterization of the agreement as a contract of adhesion, contending that there was not an adequate evidentiary basis to make that finding. We therefore begin our analysis by putting aside the judge's finding that the contract was one of adhesion, and will address it only if it becomes necessary to our resolution of this appeal.
1. Choice of law. We consider the enforceability of the Massachusetts choice of law provision before turning to the forum non conveniens analysis because the determination as to which State's substantive law shall govern the dispute has a bearing on the forum non conveniens analysis. Under Massachusetts choice of law principles, if the agreement here were silent as to choice of law, the rights of the parties would be "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 632, 473 N.E.2d 662 (1985), quoting Restatement (Second) of Conflict of Laws § 188(1) (1971).
In identifying the State with the most significant relationship to the transaction and the parties, we evaluate: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Bushkin Assocs., Inc., supra, quoting Restatement (Second) of Conflict of Laws, supra at § 188(2).
**468 Here, Hernandez interviewed for the position in California, signed the agreement in California, trained in California, and performed all of his job duties in California. The subject matter of the contract -- Hernandez's employment with Oxford -- was located exclusively in California. Moreover, Hernandez allegedly committed a breach of the agreement in California by, among other things, soliciting clients located in California while employed at MindSource in California. Although Oxford is headquartered *564 in Massachusetts and incorporated in Delaware, the only office where Hernandez worked for Oxford is located in California, and the record does not reflect any instance where Hernandez conducted Oxford-related business in Massachusetts. Accordingly, in the absence of a choice of law provision, Massachusetts choice of law principles would apply California substantive law to this dispute because California undoubtedly has the most significant relationship to the agreement and the parties.
The choice of law provision in the agreement, by declaring that "this Agreement will be governed by the laws of Massachusetts, without giving effect to the conflict of laws provisions thereof," expressly provides that Massachusetts substantive law will govern the agreement even if a Massachusetts choice of law analysis might lead to the application of the substantive law of another State (namely, California).[5] Where, as here, "the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." Hodas v. Morin, 442 Mass. 544, 549-550, 814 N.E.2d 320 (2004), quoting Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 260, 362 N.E.2d 222 (1977). See Morris v. Watsco, Inc., 385 Mass. 672, 674, 433 N.E.2d 886 (1982) ("Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship").
In deciding whether the result of a choice of law agreement is contrary to public policy, we conduct the two-tiered analysis set forth in the Restatement (Second) of Conflict of Laws § 187(2) (1971). See Hodas, 442 Mass. at 550, 814 N.E.2d 320. We will not honor the **469 parties' choice of law where " '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) [where] application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue]' and is the State whose law would apply ... 'in the absence of an effective choice of law by the parties.' " Id., quoting Restatement (Second) of Conflict of Laws, supra.
Applying that two-tiered analysis, the choice of law provision survives the first tier because, where Oxford is headquartered here, Massachusetts has a "substantial relationship" to the transaction. See Restatement (Second) of Conflict of Laws § 187(2)(a). See also Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 197, 988 N.E.2d 408 (2013). But the choice of law provision does not survive the second tier of the analysis because the application of Massachusetts substantive law to this employment dispute would be contrary to a fundamental policy of California, which has a materially greater interest in the dispute than Massachusetts, and which is the State whose law would apply if there had been no choice of law provision in the agreement.
California has a "settled legislative policy in favor of open competition and employee mobility,"
*565 Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 946, 81 Cal.Rptr.3d 282, 189 P.3d 285 (2008), reflected in Cal. Bus. & Prof. Code § 16600, which provides, with statutory exceptions not applicable here, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As interpreted by California appellate courts, § 16600 renders void not only any covenant not to compete, but also any covenant barring an employee from soliciting the customers of a prior employer. See Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564, 575, 102 Cal.Rptr.3d 1 (2009) (broadly worded nonsolicitation clause that prevents employees for period of eighteen months postemployment from "soliciting any business from, selling to, or rendering any service directly or indirectly to any of the accounts, customers or clients with whom they had contact during their last [twelve] months of employment" is "void and unenforceable under [§] 16600"); Retirement Group v. Galante, 176 Cal. App. 4th 1226, 1238, 98 Cal.Rptr.3d 585 (2009) (" [§] 16600 bars a court from specifically enforcing [by way of injunctive relief] a contractual clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new **470 business").[6] Moreover, an employer's inclusion of noncompetition or nonsolicitation provisions in an agreement with an employee is actionable as an "unlawful, unfair or fraudulent business act or practice," in violation of Cal. Bus. & Prof. Code § 17200. See Dowell, supra. See also Saunders v. Superior Court of Los Angeles County, 27 Cal. App. 4th 832, 839, 33 Cal.Rptr.2d 438 (1994).
Massachusetts presently has no comparable legislative policy favoring open competition and employee mobility, and no statute akin to Cal. Bus. & Prof. Code § 16600. In Massachusetts, the common-law principles governing the enforceability of noncompetition agreements are less categorical than the absolute prohibition under California law. A noncompetition agreement in Massachusetts "is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest." Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639, 815 N.E.2d 572 (2004), cert. denied, 544 U.S. 922, 125 S.Ct. 1662, 161 L.Ed.2d 480 (2005). Any such noncompetition agreement must be reasonable under the circumstances and no broader than "necessary to protect [an employer's] legitimate business interest[s]," which include the *566 protection of trade secrets, confidential information, and good will. See id. at 639, 641, 815 N.E.2d 572. See also All Stainless, Inc. v. Colby, 364 Mass. 773, 778, 308 N.E.2d 481 (1974). Although these cases considered only noncompetition agreements, Superior Court judges have applied these same principles to employee nonsolicitation agreements. See Getman v. USI Holdings Corp., Mass. Super. Ct., No. 05-3286-BLS2, 2005 WL 2183159 (Suffolk County Sept. 1, 2005), quoting **471 Marine Contrs. Co. v. Hurley, 365 Mass. 280, 287, 310 N.E.2d 915 (1974) ("a [nonsolicitation] provision, like an employee covenant not to compete, generally is enforceable only to the extent that it is 'necessary to protect the legitimate business interests of the employer,' " and is also "[ ]reasonable in its time, space, [and] scope"). See also BNY Mellon, N.A. vs. Schauer, Mass. Super. Ct., No. 201001344BLS1, 2010 WL 3326965 (Suffolk County May 14, 2010) (applying enforceability analysis of noncompetition provisions to determine enforceability of nonsolicitation provision).
Oxford's amended complaint specifically alleged that Hernandez "breached the non-solicitation provisions of the Agreement by using Oxford's Confidential Information to solicit or seek to place Oxford's customers on behalf of himself and MindSource or persuade, induce, or attempt to persuade or induce Oxford's customers to refrain from providing services to Oxford or Oxford's customers." If Massachusetts law were to govern the agreement, the enforceability of the nonsolicitation provision barring Hernandez from soliciting customers would be governed by different legal principles from those that would govern if California law were to govern the agreement. And, if this nonsolicitation provision were deemed void, California law provides the employee with a statutory remedy that is not available under Massachusetts law in the context of employment. See, e.g., Manning v. Zuckerman, 388 Mass. 8, 14, 444 N.E.2d 1262 (1983) (because "[a]n employee and an employer are not engaged in trade or commerce with each other ... disputes arising from an employment relationship between an employee and the organization that employs him ... are not covered by the [G. L.] c. 93A remedies afforded in commercial transactions"). As a result, if Massachusetts law were to apply to the nonsolicitation provision, the fundamental public policy of California favoring open competition and employee mobility would not be honored with respect to an employment agreement in a case where California has a materially greater interest than Massachusetts because Hernandez executed, performed, and allegedly committed a breach of the agreement in California.
In Melia v. Zenhire, Inc., 462 Mass. 164, 181, 967 N.E.2d 580 (2012), we held that a New York court, applying New York's choice of law rules, "would certainly recognize that the interests of the Commonwealth are implicated and would apply Massachusetts law" to claims brought by an employee against his employer under the Massachusetts Wage Act. Just as we expected a New York court to honor the fundamental public policy of Massachusetts as **472 reflected in the Wage Act in Melia, see itation index="53" url="https://cite.case.law/citations/?q=967%20N.E.2d%20580">id., here we honor the fundamental public policy of California as reflected in Cal. Bus. & Prof. Code § 16600, and apply California law -- despite the parties' agreement to apply Massachusetts law. Cf. Aspect Software, Inc. v. Barnett, 787 F.Supp.2d 118, 126-127 (D. Mass. 2011) (Massachusetts choice of law provision in employment agreement was enforceable against California defendant because noncompetition clause was "tailored in such [a] way as to avoid implicating California's fundamental policy against broad noncompetition agreements"). Without such a *567 commitment to honor the fundamental public policy of another State regarding open competition and employee mobility, an employer might successfully execute an "end-run" around that policy by including a choice of law provision in its employment agreements.
In sum, the Massachusetts choice of law provision here bars a court from engaging in a choice of law analysis that, as a matter of public policy, should lead to the application of California substantive law. Accordingly, to the extent that the choice of law provision here requires Massachusetts law to apply to the enforcement of the customer nonsolicitation provisions in the agreement, we declare the choice of law provision unenforceable.[7] And because Oxford's other claims (including the claim of breach of the agreement's confidentiality provisions) are interwoven with the claim of breach of the nonsolicitation provisions, we conclude that the substantive law of California must be applied to all claims in Oxford's amended complaint.
2. Motion to dismiss for forum non conveniens. The well-established common-law doctrine of forum non conveniens provides that, "where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum." Gianocostas, 450 Mass. at 723, 881 N.E.2d 134, quoting **473 Universal Adjustment Corp. v. Midland Bank, Ltd., 281 Mass. 303, 313, 184 N.E. 152 (1933). The statutory formulation of forum non conveniens mirrors the common-law doctrine and provides that, "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just." G. L. c. 223A, § 5. A court evaluating a motion to dismiss on the ground of forum non conveniens will look to whether "there is an alternative forum in which justice may be had, and if the balance of private and public concerns strongly favor the defendant's motion." Gianocostas, supra."A decision whether to dismiss an action under the doctrine of forum non conveniens involves the discretion of the motion judge, cannot be made by applying a universal formula, and depends greatly on the specific facts of the proceeding before the court." W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. 572, 577, 555 N.E.2d 214 (1990).
Because the doctrine of "forum non conveniens is not a substantive right of the parties, but a procedural rule of the forum," American Dredging Co. v. Miller, 510 U.S. 443, 454 n.4, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), a Massachusetts forum must apply its own procedural law when reviewing a motion to dismiss on the ground of forum non conveniens, even if it would have applied the substantive law of California to adjudicate the merits of the case. See generally Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 50 (1st Cir. 1990), quoting *568 Sibaja v. Dow Chem. Co., 757 F.2d 1215, 1218-1219 (11th Cir.), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985) ("forum non conveniens 'is a rule of venue, not a rule of decision,' " and "[t]he doctrine derives from the court's inherent power ... to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice and oppression").
We recognize that Oxford brought this action in Massachusetts in accordance with the forum selection provision in the agreement, that Hernandez does not challenge either personal jurisdiction or venue, and that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." W.R. Grace & Co., 407 Mass. at 578, 555 N.E.2d 214, quoting New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 95, 228 N.E.2d 440 (1967). We note at the outset that the forum selection provision in the agreement does not preclude Hernandez from moving for dismissal on the ground of forum non conveniens. Under that provision, Hernandez waived any objection to personal jurisdiction and venue if a **474 suit under the agreement is brought in a Massachusetts court, but he makes no such objection here.
Even if the forum selection provision had specifically included language waiving any objection to the choice of forum, we would not construe that contractual provision to deprive a defendant of his or her ability to move to dismiss on the ground of forum non conveniens. See generally W.R. Grace & Co., 407 Mass. at 580-581, 555 N.E.2d 214 (dismissal on ground of forum non conveniens not precluded by "service of suit" clause in excess coverage policy that, while not technically forum selection provision, compelled insurers to accept Massachusetts forum for disputes). Forum non conveniens considers both public concerns, such as "administrative burdens caused by litigation that has its origins elsewhere and the desirability of the trial of a case in a forum that is at home with the governing law," and private concerns, such as the "practical problems that do or do not make a trial easy, expeditious, and inexpensive, such as the ease of access to proof, the availability of compulsory process, and the cost of attendance of witnesses." Id. at 578, 555 N.E.2d 214. See New Amsterdam Cas. Co., 353 Mass. at 95-96, 228 N.E.2d 440. These are matters affecting the "interest of substantial justice," G. L. c. 223A, § 5, that a court cannot ignore regardless of any prior agreement between the parties. Moreover, when the parties enter into an agreement regarding the choice of forum, they cannot foresee the particular circumstances of future litigation and predict at that time whether the interest of substantial justice might require the litigation to be tried in a more convenient forum.
A forum selection provision, however, has some bearing on the consideration by a judge of the private factors insofar as, by agreeing to a particular forum, the defendant waives any objection to the forum based on the inconvenience of the forum to him or her. See W.R. Grace & Co., 407 Mass. at 580, 555 N.E.2d 214 ("service of suit clause bars an insurance company from relying on its own inconvenience to assert a claim of forum non conveniens"). But we do not believe that a defendant's agreement to a forum waives an objection to the forum based on any other private factor, including the convenience of witnesses. Witnesses to be called by a party are not "their witnesses" in the sense that they are invariably agents of the party or persons whose concerns about inconvenience can be waived by the party, especially where the party is unlikely to know who these witnesses will be and the *569 extent of **475 their inconvenience when the party agrees to a choice of forum.[8]
In determining whether the judge abused his discretion in allowing Hernandez's motion to dismiss on the ground of forum non conveniens, we consider first whether "there is an alternative forum in which justice may be had." Gianocostas, 450 Mass. at 723, 881 N.E.2d 134. Here, California is certainly an alternative forum where justice may be had. Having decided that California substantive law applies to this case, a California court is at least as capable as a Massachusetts court to hear this matter and fairly decide it. The only potential impediment to justice here is if one or more of Oxford's claims would be barred by the statute of limitations if the case were dismissed in Massachusetts and refiled in California. However, Hernandez has represented that he is willing to waive any defense based on the statute of limitations to obviate this possible impediment to litigating in California.
We consider next whether "the balance of private and public concerns strongly favor the defendant's motion." Id. The judge here found that "the relevant private interests weigh heavily in favor of litigating this case in California." In support of this finding, he noted that "everything relevant to this case happened in California." He found that "all relevant witnesses are located in California and cannot be compelled to testify in Massachusetts," that all relevant evidence is either located in California or available electronically, that "[i]t will be easier and more efficient for both Hernandez and Oxford to try this case in California," and, **476 most significantly, that "Hernandez will be unable adequately to defend himself unless the case is litigated in California." The judge appeared to give little, if any, weight to the inconvenience to Hernandez himself in having this case tried in Massachusetts, which, assuming the forum selection provision was enforceable, is the only factor that was waived by Hernandez when he executed the agreement.
With respect to the public concerns, the judge found that "California has a much stronger interest than Massachusetts in deciding whether Hernandez breached his contract or committed a tort in trying to convince some of Oxford's customers or consultants in California to use a competitor instead." In support of this finding, he noted that Hernandez was a California resident and that the business operations that Oxford claimed were harmed are located in California and serve California *570 customers. In contrast, he noted that "Massachusetts has very little interest in the outcome of this lawsuit."
We conclude that the judge did not abuse his discretion in deciding, after fair consideration of the private and public concerns, that in the interest of substantial justice this action should be dismissed on the ground of forum non conveniens so that the case can be resolved in a California court. We add only that, because dismissal on the ground of forum non conveniens requires the availability of another suitable forum in California, the dismissal of Oxford's claims ought to be conditioned on Hernandez affirmatively waiving any defenses available to him based on the applicable statute of limitations. See Gianocostas, 450 Mass. at 727, 881 N.E.2d 134.
We note two other public concerns not mentioned by the judge that support dismissal on the ground of forum non conveniens. First, the California Legislature recently enacted Cal. Lab. Code § 925, which prohibits employers from requiring employees who primarily reside and work in California, as a condition of employment, to agree to a provision in an employment agreement that would require the employee to adjudicate outside California a claim arising in California, or that would deprive the employee of the substantive protection of California law with respect to a controversy arising in California. See Cal. Lab. Code § 925(a). Any such provision in an employment contract is voidable by the employee. See Cal. Lab. Code § 925(b). Although this statute applies only to contracts entered into, modified, or extended on or after January 1, 2017, see Cal. Lab. Code § 925(f), and consequently **477 does not affect the agreement here, the enactment of the statute reflects a California public policy to protect employees who reside and work in California from being induced by an employer to agree to litigate in a forum outside of California.
Second, the agreement in this case includes a broad range of information within the definition of confidential information that might not constitute a trade secret under California law. See Cal. Civ. Code § 3426.1(d) (under California law, " '[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). Although California law plainly recognizes that § 16600 typically bars nonsolicitation agreements as well as noncompetition agreements, it is unclear whether, and to what extent, § 16600 will be interpreted to prohibit or limit the scope of confidentiality provisions that bar the disclosure of information that does not constitute a trade secret, and whose enforcement might impinge on an employee's ability successfully to perform his or her work for a competitor of a former employer. See Golden v. California Emergency Physicians Med. Group, 782 F.3d 1083, 1093 (9th Cir. 2015) (there is "no reason to believe that [California] has drawn [§] 16600 simply to prohibit 'covenants not to compete' and not also other contractual restraints on professional practice"). While a Massachusetts court is capable of applying California substantive law to resolve disputed issues of California law, it is preferable for the evolution of California law that such disputes be resolved by a California court, where appeals from such decisions can be resolved in a California appellate court. See, e.g., *571 Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 106-107 (1st Cir. 2009) ("Although the district court correctly acknowledged that federal courts, if necessary, are capable of interpreting Israeli law, here, the district court did not err in concluding that Israel is the preferable forum given Israel's stronger connection to the instant case"); Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 953 (1st Cir. 1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992) (case properly dismissed on forum non conveniens ground where "plaintiff's claims implicate duties the defendants owed to the corporation and its shareholders under Canadian law" and "at least some significant portion of the adjudication of [the **478 defendant's] case will involve tasks most easily and appropriately handled by a Canadian court: interpreting primarily Canadian law and applying it to matters principally of concern to Canada and Canadians").
3. The appropriateness of appellate attorney's fees and costs. Hernandez contends that he is entitled to appellate attorney's fees and costs on the grounds that "Oxford has based its appeal on inapplicable standards, outdated case law, nonexistent issues, and conclusions that the judge never reached." "If [an] appellate court shall determine that an appeal [in a civil case] is frivolous, it may award just damages and single or double costs to the appellee, and such interest on the amount of the judgment as may be allowed by law." Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979). See G. L. c. 211, § 10. "An appeal is frivolous '[w]hen the law is well settled, [and] when there can be no reasonable expectation of a reversal ....' " Avery v. Steele, 414 Mass. 450, 455, 608 N.E.2d 1014 (1993), quoting Allen v. Batchelder, 17 Mass. App. Ct. 453, 458, 459 N.E.2d 129 (1984). "Unpersuasive arguments do not necessarily render an appeal frivolous" and determining "whether an appeal is frivolous is left to the sound discretion of the appellate court." Marabello v. Boston Bark Corp., 463 Mass. 394, 400, 974 N.E.2d 636 (2012).
Although we affirm the order of dismissal on the ground of forum non conveniens, we do not conclude that Oxford's appeal is frivolous. Oxford focused much of its energy in this appeal on the judge's finding that the agreement was an adhesion contract, and that, in part for that reason, the choice of law and forum selection provisions in the agreement were not enforceable. We did not need to reach the adhesion contract issues, because we affirmed the dismissal on a different ground.[9] Where the challenge to the judge's reasoning in reaching his decision was not frivolous, we conclude that Hernandez is not entitled to appellate attorney's fees and costs under Mass. R. A. P. 25.
Conclusion. We affirm the order of dismissal on the ground of forum non conveniens. The case is remanded to the Superior Court for entry of a judgment consistent with this opinion, which shall be conditioned on Hernandez affirmatively waiving any **479 defenses available to him based on the applicable statute of limitations.
So ordered.

We acknowledge the amicus brief submitted by the Massachusetts Employment Lawyers Association.

Oxford's parent company, On Assignment, Inc., has a principal place of business in Calabasas, California.

Under the "Confidentiality, Non-Solicitation and Non-Competition Agreement" (agreement) that Hernandez entered into with Oxford Global Resources, Inc. (Oxford), "Confidential Information includes any and all information ... concerning: (a) the Company's business plans, strategic plans, forecasts, budgets, sales, projections and costs; (b) the Company's personnel and payroll records and employee lists; (c) candidates and Consultant/Contractors, including lists, resumes, preferences, transaction histories, rates and related information; (d) the Company's customers and prospective customers, including their identity, special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices; (e) marketing activities, plans, promotions, operations, and research and development; (f) business operations, internal structures and financial affairs; (g) systems and procedures; (h) pricing structure; (i) proposed services and products; (j) contracts with other parties; (k) Oracle customer identification numbers; (l) solutions to Company's customer's technical problems; and (m) Company customer history and technical information." The agreement specifically provides that Oxford may allow the publication of "Confidential Information" on a social media site but doing so does not waive Oxford's "rights to assert control or ownership of the Confidential Information."

The agreement provided that, during the term of employment and for a period of twelve months following termination, the employee was barred from "directly or indirectly" making use of Oxford's "trade secret information including, without limitation, the identity of [Oxford's] customers or prospective customers, ... special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices" to either (1) "solicit or seek to provide services to any customer for or on behalf of any entity engaged in or seeking to be engaged in [Oxford's] [b]usiness," or to (2) "persuade, induce or attempt to persuade or induce any such entity to alter or reduce its use of services from [Oxford]." Largely similar restrictions applied to barring the employee from making use of Oxford's "trade secret information including, without limitation, the identity of [Oxford's] candidates or prospective candidates" -- that is, the current or prospective contractors whom Oxford placed with customers.

Because the agreement's choice of law provision expressly excludes the application of Massachusetts conflict of laws principles, we need not determine whether a choice of law provision alone implicitly excludes the application of those principles. Cf. IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A., 20 N.Y.3d 310, 316, 958 N.Y.S.2d 689, 982 N.E.2d 609 (2012) ("The Restatement [Second] of Conflict of Laws supports our conclusion that an express exclusion of New York's conflict-of-laws rules is unnecessary").

In the past, California law has recognized a common-law exception to Cal. Bus. & Prof. Code § 16600 when the enforcement of a noncompetition covenant is necessary to protect an employer's trade secrets. See, e.g., Muggill v. Reuben H. Donnelley Corp., 62 Cal. 2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965) (§ 16600"invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment ... unless [the provisions] are necessary to protect the employer's trade secrets"). But the continued viability of that common-law exception to § 16600 is in doubt. See Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564, 577, 102 Cal.Rptr.3d 1 (2009) ("we doubt the continued viability of the common law trade secret exception to covenants not to compete"). See also Aspect Software, Inc. v. Barnett, 787 F.Supp.2d 118, 126 n.6 (D. Mass. 2011), and cases cited ("More recently, some California courts have questioned the vitality of the Muggill line of cases defining the trade secrets exception to Section 16000"). We need not decide whether this common-law exception to § 16600 continues to exist under California law because, even if it did, it would not apply here, where "the noncompete and nonsolicitation clauses in the agreements are not narrowly tailored or carefully limited to the protection of trade secrets, but are so broadly worded as to restrain competition." Dowell, supra.

If the damages in this case had rested solely on the allegation that Hernandez misappropriated Oxford's trade secrets, we recognize that it would be a closer call whether to enforce the Massachusetts choice of law provision, because both Massachusetts and California have an interest in protecting companies from the misappropriation of trade secrets by departing employees. But because the damages in this case rest mostly, if not entirely, on Hernandez's alleged solicitation of Oxford clients, the crux of the case is the enforceability of the nonsolicitation provisions in the agreement. And, as discussed above, there is a significant disparity between how California and Massachusetts enforce nonsolicitation provisions in employment contracts.

In so holding, we recognize that we depart from the guidance given to Federal District Courts by the United States Supreme Court where there is a valid forum selection provision and a defendant moves to dismiss or transfer venue pursuant to 28 U.S.C. § 1404(a), which codifies the doctrine of forum non conveniens where the transferee forum is within the Federal court system. In Atlantic Marine Constr. Co. v. United States Dist. Court for W. Dist. of Texas, 571 U.S. 49, 64, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013), the Supreme Court declared, "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." We are not bound by the Supreme Court's guidance -- it interprets the Federal motion to transfer venue statute, and applies only to cases tried in Federal court. In contrast, our analysis is concerned with the State's forum non conveniens statute and common-law doctrine of forum non conveniens and, accordingly, is a procedural doctrine that applies only to cases tried in a Massachusetts State court. We add that, even if we were to apply the Federal guidance under Atlantic Marine Constr. Co., the result in this case would be the same, given the strength of the public concerns that support the allowance of Hernandez's motion to dismiss for forum non conveniens, as discussed infra.

No inference should be drawn regarding our view of the merits of the judge's finding that the agreement was an adhesion contract, or regarding the consequences he gave to that finding, from our failure to address those issues. We did not reach those issues because it was not necessary to do so in order to decide this appeal.