# United States Court of Appeals
## For the First Circuit

No. 19-1611

NUVASIVE, INC.,

Plaintiff-Appellee,

v.

TIMOTHY DAY,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Bryan E. Busch, with whom Busch Slipakoff Mills & Slomka, LLC, Steven D. Weatherhead, and Marathas Barrow Weatherhead Lent LLP were on brief, for appellant.
Mary Taylor Gallagher, with whom Holly M. Polglase, Michael S. Batson, Hermes, Netburn, O'Connor & Spearing, P.C., Christopher W. Cardwell, M. Thomas McFarland, and Gullett, Sanford, Robinson & Martin, PLLC, were on brief, for appellee.

April 8, 2020

**BARRON**, **Circuit Judge**.  In this appeal, Timothy Day, a Massachusetts resident, challenges a preliminary injunction that the United States District Court for the District of Massachusetts granted to his former employer, NuVasive, Inc., which is a health-care company incorporated in Delaware.  The injunction, which enforces a nonsolicitation clause in the employment contract between Day and NuVasive, bars Day from engaging in certain work for his new employer, Alphatec Spine, Inc., which is one of NuVasive's competitors.

Day's challenge to the injunction turns on a choice-of-law issue under Massachusetts law.  The District Court held that Massachusetts' choice-of-law rules permitted it to enforce the choice-of-law provision set forth in Day's employment contract with NuVasive, which explicitly stated that the "[a]greement shall be interpreted and enforced in accordance with Delaware law, without giving effect to its laws pertaining to conflict of laws."  The District Court thus premised its issuance of the preliminary injunction that is at issue on its application of Delaware law.  Day contends, however, that Massachusetts' choice-of-law rules required the District Court to apply Massachusetts law and that, under Massachusetts law, NuVasive could not show that it was entitled to the preliminary injunction, even if NuVasive could make that showing under Delaware law.  We **affirm**.

NuVasive designs and manufactures products for the treatment of spine disease. NuVasive distributes these products through both its own employees and exclusive distributors.

Day first became affiliated with NuVasive in 2008 while he was working for Integrity Medical, Inc., which at the time was an exclusive distributor for NuVasive. Thereafter, Day became an employee of NuVasive, where he worked as a sales representative from August of 2011 until December of 2012.

At that time, Day left NuVasive to become a sales representative for another one of NuVasive's exclusive distributors, Magellan Medical LLC. But, five years later, on January 1, 2018, Day once again became an employee of NuVasive, this time as a sales director for the company in Massachusetts and Rhode Island.

It was during this period of employment with NuVasive that Day signed, as a condition of his employment, a Proprietary Information, Inventions Assignment, Arbitration and Restrictive Covenant Agreement ("PIIA"). The PIIA included a nonsolicitation clause and a noncompetition clause, which applied during Day's engagement with NuVasive and for one year immediately after.[1]

---

[1] The nonsolicitation clause provides, in relevant part, that the employee agrees not to:

On January 3, 2019, however, Day once again left NuVasive, this time to become an employee and owner of Rival Medical LLC, which was, at that time, itself an exclusive distributor for NuVasive. But, then, several months later, in

---

solicit, entice, persuade, induce, call upon or provide services to any of the Customers . . . , accounts or clients that [the employee] worked with, had responsibility or oversight of, provided services related to, or learned significant information about during my employment (or other association) with the Company for any purpose other than for the benefit of the Company . . . .

And, the noncompetition clause forbids the employee from any affiliation with a "Conflicting Organization," which is defined as:

any person, group of persons, or organization that is engaged in, or about to be engaged in, research on, consulting regarding, or development, production, marketing or selling of any product, process, invention or service, which resembles, competes with, or replaces a product, process, machine, invention or service upon which [the employee] shall have worked or about which [the employee] became knowledgeable as a result of [the employee's] relationship with the Company, and whose use or marketability could be enhanced by the application of Proprietary Information to which [the employee] shall have had access during such relationship.

For employees with certain titles, including Sales Director, Sales Associate, and "any substantially similar position[s]," the "post-employment restrictions" described in the noncompetition clause are limited to Customers for which the employee "was assigned responsibility for by the Company, participated in sales calls and/or marketing efforts on behalf of the Company, and/or covered medical procedures on behalf of Company, during the last twelve months of [the employee's] employment with Company."

- 4 -

April of 2019, Day dissolved Rival and terminated its relationship with NuVasive.

In response, NuVasive sent Day and Rival a notice of material breach of contract. Notable for present purposes, NuVasive also reminded Day of his noncompetition and nonsolicitation obligations under the PIIA. Nonetheless, soon after ending his employment at Rival, Day began working as an employee of Alphatec Spine, which is one of NuVasive's competitors. At that point, NuVasive sued Day in the District of Massachusetts based on its diversity jurisdiction. See 28 U.S.C. § 1332.

NuVasive's complaint against Day alleged tortious interference and breach of contract and requested a preliminary injunction to bar Day from violating his noncompetition and nonsolicitation obligations under the PIIA in his work for Alphatec. Day opposed the request for the preliminary injunction on the ground that, notwithstanding the choice-of-law provision in his contract with NuVasive, Massachusetts rather than Delaware law applied to NuVasive's breach of contract claims and that those claims must be dismissed under Massachusetts law. NuVasive countered that, pursuant to the choice-of-law provision contained in its employment contract with Day, Delaware law applied to the breach of contract claims and that, under Delaware law, Day's opposition to the request for the preliminary injunction lacked merit.

To resolve the threshold choice-of-law dispute concerning NuVasive's breach of contract claims, the District Court applied Massachusetts' choice-of-law rules.[2] The District Court then held that, under those rules, the choice-of-law provision in Day's employment contract with NuVasive governed. The District Court thus held that Delaware law applied to NuVasive's breach of contract claims and that, although NuVasive had not shown "a reasonable likelihood of success" on its claim that Day had breached the noncompetition clause of the PIIA by taking his new job with Alphatec, NuVasive had "shown a reasonable likelihood of success" on its claim that he had breached the nonsolicitation clause of the PIIA by doing so. After considering the other factors that bear on whether a party is entitled to a preliminary injunction, the District Court then issued a preliminary injunction that enforced the PIIA's nonsolicitation clause against Day. This timely appeal followed.

## II.

To secure a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is

---

[2] Although NuVasive also asserted a tortious interference claim against Day, the focus of its preliminary injunction motions was on its claims for breach of contract, and thus the District Court's analysis was just focused on those claims.

withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003); see also Lanier Prof'l Servs., Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999) ("We apply the federal preliminary injunction standard in a diversity case, at least where the parties have not suggested that state law supplies meaningfully different criteria."). The only one of these four requirements that is in dispute on this appeal concerns the likelihood-of-success requirement.

When reviewing "a trial court's ruling on a motion for a preliminary injunction, we scrutinize abstract legal matters de novo, findings of fact for clear error, and judgment calls with considerable deference to the trier." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013) (internal quotation marks and citation omitted). We review choice-of-law determinations de novo. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004).

Here, the parties agree that Massachusetts' choice-of-law rules control, given that Massachusetts is the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Moreover, Day does not challenge the District Court's ruling that, under Delaware law, NuVasive has made the requisite likelihood-of-success showing on its claim that Day breached the nonsolicitation clause in his employment contract with NuVasive

through his work with Alphatec. Instead, Day contends, Massachusetts' usual choice-of-law rule, which is that the law of the state that a contract's choice-of-law clause selects is the law that controls, does not apply. In consequence, Day contends, Massachusetts and not Delaware law applies to NuVasive's breach of contract claims against him and thus determines whether NuVasive can show that it can satisfy the likelihood-of-success requirement in seeking a preliminary injunction based on those claims. This contention is critical, because, Day further contends, if Massachusetts rather than Delaware law applies, then NuVasive cannot satisfy that requirement and thus the preliminary injunction against him cannot be sustained.

In pressing this line of argument, Day relies on two exceptions to the usual choice-of-law rule under Massachusetts law, which is that the choice-of-law provision in an employment contract should be enforced. See Oxford Glob. Res., LLC v. Hernandez, 106 N.E.3d 556, 564 (Mass. 2018). But, as we will explain, neither of those exceptions applies here.

The first exception prevents a choice-of-law provision in an employment contract from being enforced when such a provision chooses the law of a state that "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Oxford Glob. Res., 106 N.E.3d at 564 (quoting Restatement (Second) of Conflict of Laws § 187(2)

- 8 -

(1971)).  But, this exception plainly does not apply here, because Delaware is NuVasive's place of incorporation and NuVasive is the plaintiff.  See id. (citing to the Restatement); Restatement (Second) of Conflict of Laws § 187(2) cmt. f (1971) (recognizing the validity of choice-of-law provisions where "the state of [the chosen law] is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business"); see also Cream of Wheat Co. v. Grand Forks Cty., 253 U.S. 325, 328 (1920) (explaining that a company is domiciled in the state where "it was incorporated under the laws of that state").

The second exception prevents a choice-of-law provision in an employment contract from being enforced when the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue]," and the law of the state with the greater interest would otherwise apply "in the absence of an effective choice of law by the parties."  Oxford Glob. Res., 106 N.E.3d at 564 (alterations in original) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)).  But, even if we were to assume that Massachusetts "has a materially greater interest than" Delaware in the granting of the preliminary injunction and that Massachusetts law would apply "in the absence of an effective choice of law"

provision in an employment contract, Day has failed to show that the application of Delaware law in this case would be contrary to "a fundamental policy" of Massachusetts.  Id.

In contending otherwise, Day first argues that the Massachusetts Noncompetition Agreement Act ("MNCA"), Mass. Gen. Laws ch. 149, § 24L, which sets forth the requirements for an employee noncompetition agreement to be enforceable, represents a fundamental Massachusetts policy that would be violated by the application of Delaware law here, insofar as Delaware law would allow NuVasive to enforce the PIIA's nonsolicitation clause against Day pursuant to its breach of contract claim.  But, the MNCA "only applies to employee noncompetition agreements entered into on or after October 1, 2018," Automile Holdings, LLC v. McGovern, 136 N.E.3d 1207, 1217 n.15 (Mass. 2020); see St. 2018 Mass., ch. 228, § 71 ("Section 24L of chapter 149 of the General Laws may be referred to as the Massachusetts Noncompetition Agreement Act and shall apply to employee noncompetition agreements entered into on or after October 1, 2018."), and Day signed the PIIA nearly a year earlier, on January 6, 2018. Moreover, none of the MNCA's provisions are relevant to the PIIA's nonsolicitation clause because, "[b]y its terms, the [MNCA] does not apply to nonsolicitation agreements." Automile Holdings, 136 N.E.3d at 1217 n.15; see Mass. Gen. Laws ch. 149, § 24L (excluding "covenants not to solicit or hire employees of the employer" and

- 10 -

"covenants not to solicit or transact business with customers, clients, or vendors of the employer" from the definition of "noncompetition agreement").

Day's remaining contention is that Massachusetts' "material change" doctrine constitutes a "fundamental" Massachusetts policy and that the enforcement of the PIIA's nonsolicitation provision against him, pursuant to NuVasive's breach of contract claim, would violate that doctrine. Under the "material change" doctrine, a "non-solicitation agreement or covenant not to compete may be deemed void if there are material changes in the employment relationship between an employee and the employer." Patriot Energy Grp., Inc. v. Kiley, No. SUCV2013-04177-BLS1, 2014 WL 880880, at *7 (Mass. Super. Ct. Feb. 26, 2014).

But, while Day did remain affiliated with NuVasive when he left it to work for Rival Medical, as Rival was one of NuVasive's exclusive distributors, Day himself stated both that "on January 3, 2019, Day ceased being a NuVasive employee," as he had by then moved over to Rival, and that this date marked the "terminat[ion]" of his "employment relationship with NuVasive." That is significant because Day has not identified any precedent that indicates that such a "termination" -- at least when it has been occasioned, as it was in this case, by an employee's own choice to terminate that employment -- is a qualifying "change" under Massachusetts' "material change" doctrine. Rather, the only cases

that Day cites in support of his position as to what constitutes such a qualifying "change" involve changes in the conditions of employment of an employee who continued to be employed by the same employer, such as an employer cutting the employee's pay, an employer demoting the employee, or an employer materially breaching some term of the employee's employment contract. See Agero Admin. Serv. Corp. v. Campolo, 366 F. Supp. 3d 170, 174 (D. Mass. 2019); Rent-A-PC, Inc. v. March, Civil Action No. 13–10978–GAO, 2013 WL 2394982, at *3 (D. Mass. May 28, 2013); Patriot Energy Grp., 2014 WL 880880, at *7; Akibia, Inc. v. Hood, No. SUCV201202974F, 2012 WL 10094508, at *7-8 (Mass. Super. Ct. Oct. 9, 2012), aff'd, No. 12–J–390, 2012 WL 12370255 (Mass. App. Ct. Nov. 21, 2012); Getman v. USI Holdings Corp., No. 05-3286-BLS2, 2005 WL 2183159, at *2-4 (Mass. Super. Ct. Sept. 1, 2005); see also KNF & T Staffing, Inc. v. Muller, No. SUCV201303676BLS1, 2013 WL 7018645, at *3 n.4 (Mass. Super. Ct. Oct. 24, 2013) (explaining that the "broadest restatement of the doctrine is that '[e]ach time an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship[,] a new restrictive covenant must be signed'" (first alteration in original) (emphasis added) (quoting Iron Mountain Info. Mgmt., Inc. v. Taddeo, 455 F. Supp. 2d 124, 132-33 (E.D.N.Y. 2005))); Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 16 (1st Cir. 2009) (quoting Lycos, Inc. v.

<u>Jackson</u>, No. 2004–3009, 2004 WL 2341335, at *3 (Mass. Super. Ct. Aug. 25, 2004) for the same definition of the doctrine).  This body of precedent satisfies us that, whatever the precise scope of the "material change" doctrine may be under Massachusetts law, it is not capacious enough to encompass Day's circumstance.

Thus, we see no basis for concluding that the District Court erred in finding that the fundamental public-policy exception to Massachusetts' choice-of-law rules did not apply to Day's case, such that the choice-of-law provision in his employment contract with NuVasive that selected Delaware law could not be given effect.[3]  Accordingly, we see no basis for concluding that the District Court erred in applying Delaware law to assess whether NuVasive had satisfied the "likelihood of success" requirement in seeking a preliminary injunction based on its breach of contract claim alleging Day's violation of the nonsolicitation clause in the PIIA.  And, that being so, we see no basis for finding merit in Day's challenge to the issuance of the preliminary injunction against him.

## III.

The judgment of the District Court is **<u>affirmed</u>**.

---

[3] Because we conclude that applying Delaware law does not contravene either the MNCA or the "material change" doctrine, we need not and do not resolve whether either embodies a "fundamental" Massachusetts policy.

- 13 -