LIBERTY MUTUAL INSURANCE COMPANY vs. CORREIA, 100 Mass. App. Ct. 629

 
 LIBERTY MUTUAL INSURANCE COMPANY vs. JENNIFER CORREIA. [Note 1]

100 Mass. App. Ct. 629
 October 5, 2021 - January 18, 2022

Court Below: Superior Court, Essex County
Present: Wolohojian, Vuono, & Hershfang, JJ.

 

Insurance, Motor vehicle insurance. Motor Vehicle, Insurance. Contract, Choice of law clause, Construction of contract. Words, "Bodily injury."

In a civil action involving a Massachusetts standard motor vehicle insurance policy issued by the plaintiff, a Massachusetts insurer, to a Massachusetts resident for a vehicle garaged in Massachusetts, the Superior Court judge did not err in concluding as a matter of law that, although the accident at issue occurred in Rhode Island and injured a Rhode Island resident, Massachusetts had a materially greater interest than Rhode Island in the interpretation of the policy, and thus Massachusetts law governed the policy. [631-633]

In an action brought by an insurer seeking a judgment declaring that its liability to the defendant, who had suffered emotional and psychological injuries due to witnessing the accident that killed her husband and sought to recover under an automobile insurance policy, was limited to the lower "per person" amount instead of the higher "per accident" limit of the policy, the judge did not err in concluding that the "per person" limit applied, where the defendant was not physically injured and, thus, there had been bodily injury to only one person (i.e., her husband). [633-634]

CIVIL ACTION commenced in the Superior Court Department on January 10, 2020. 

 The case was heard by James F. Lang, J., on a motion for judgment on the pleadings. 

Ronald J. Resmini for the defendant.

Kevin P. Polansky for the plaintiff.

 HERSHFANG, J. Jennifer Correia appeals from a judgment in favor of Liberty Mutual Insurance Company (Liberty Mutual) on its motion for judgment on the pleadings. At issue is whether the motion judge erred when he concluded as a matter of law that an automobile insurance policy issued by Liberty Mutual was governed by Massachusetts law and ruled that, under McNeill v. Metropolitan Prop. & Liab. Ins. Co., 420 Mass. 587 (1995),

 Page 630 

 Jennifer [Note 2] (who was not physically injured despite being at the scene of the accident that killed her husband) could not recover under the policy for her emotional and psychological injuries. Instead, the judge ruled that the most Jennifer could recover under the policy was its $250,000 "per person" limit. Discerning no error, we affirm. 

 Background. We summarize the undisputed facts. On July 4, 2019, Rhode Island residents Jennifer and her husband, Nathan -- he on a motorcycle and she in a car -- were driving in opposite directions on the same stretch of road in Bristol, Rhode Island. As Jennifer approached an intersection, the car in front of hers suddenly turned left across the lane of traffic and hit Nathan, who had started to cross the intersection from the opposite side. Jennifer saw and heard the accident; she saw the car strike her husband, causing him to fly through the air and land on the pavement. Jennifer left her car and ran to Nathan's side. Nathan was unconscious, seriously injured, and bleeding profusely. Jennifer watched as Nathan's eyes rolled to the back of his head. Jennifer stayed with Nathan until an ambulance came and took him to the hospital. About two months later, he died of his injuries. Following the accident, Jennifer was unable to work and was diagnosed with posttraumatic stress disorder (PTSD). 

 After Nathan died, Jennifer -- individually and as administratrix of his estate, and as parent of their young daughter -- sued (in Rhode Island) the driver and the owner of the car (both Massachusetts residents) that collided with Nathan, alleging negligence or recklessness, wrongful death, loss of consortium, and negligent infliction of emotional distress. Liberty Mutual tendered $250,000 to Jennifer, contending that this "per person" limit in the insurance policy was the maximum to which she was entitled because there had been "bodily injury" to only one person (Nathan). The relevant policy language establishes payment limits based on whether one or more people suffer "bodily injury":

"The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one accident is shown on the Coverage Selections 

 Page 631 

Page as the 'per person' limit for the auto involved in that accident. Subject to this limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one accident is shown on the Coverage Selections Page as the 'per accident' limit for the auto involved in that accident. This is the most we will pay as the result of a single accident no matter how many autos or premiums are shown on the Coverage Selections Page."

The policy's "Coverage Selections Page" identified these limits as follows: "Optional Bodily Injury to Others[:] $250,000 Each Person[,] $500,000 Each Accident." Jennifer rejected Liberty Mutual's position, arguing that the $500,000 "per accident" limit of the policy applied because she, too, suffered "bodily injury" in the form of postaccident trauma, including PTSD. 

 Liberty Mutual brought the underlying declaratory judgment action in the Superior Court seeking a ruling that its liability under the policy is limited to the lower, "per person" amount of $250,000. [Note 3] Ruling on Liberty Mutual's motion for judgment on the pleadings, the judge concluded that the policy must be interpreted under Massachusetts law and declared that, because there had been "bodily injury" to only one person, the $250,000 "per person" limit applied. [Note 4]

 Discussion. We first address the choice of law question. The judge ruled that Massachusetts law governs; we review that decision de novo. See Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715, 718 (2012). 

 We begin, as we must in cases involving the interpretation of a contract, with the language of the contract. Here, the policy specifies that it is "a legal contract under Massachusetts law" and adds: "There are many laws of Massachusetts relating to automobile

 Page 632 

 insurance. We and you must and do agree that, when those laws apply, they are part of this policy." This choice will be honored unless the result is contrary to public policy. See Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 468 (2018). To determine whether applying Massachusetts law is contrary to public policy, we apply a "two-tiered analysis," supplanting the parties' choice only where "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) [where] application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue] and is the State whose law would apply . . . in the absence of an effective choice of law by the parties" (quotations and citation omitted). Id. at 469.

 The choice of Massachusetts law survives the first tier of the Oxford Global Resources, LLC, analysis because Massachusetts has a "substantial relationship" to the parties. Because Jennifer does not argue this point, we give it only brief treatment. The insurance company, Liberty Mutual, is a Massachusetts company; the relevant policy was issued in Massachusetts, to Massachusetts residents, and pertained to a car that was "garaged" in Massachusetts. These facts establish a "substantial relationship" between the parties and Massachusetts.

 Turning to the second tier of the Oxford Global Resources, LLC, analysis, we consider, first, the question whether Rhode Island has a "materially greater interest" than Massachusetts in the issue posed by Liberty Mutual's declaratory judgment action. Oxford Global Resources, LLC, 480 Mass. at 469. If the answer to that question is no, that concludes the second-tier analysis. If the answer is yes, we then consider whether the application of Massachusetts law would "be contrary to a fundamental policy" of Rhode Island. Id. 

 To answer the first question, it is helpful to focus on the issue raised by this lawsuit: the interpretation of a Massachusetts standard policy between a Massachusetts resident and a Massachusetts insurer. So focused, we conclude that Massachusetts has the "materially greater interest." Although the accident happened in Rhode Island, the plaintiff, a Rhode Island resident, is a stranger to the contract. The policy language at issue was approved by the Commonwealth's Commissioner of Insurance for use in Massachusetts policies; the policy was issued in Massachusetts

 Page 633 

 to residents of Massachusetts; and the covered vehicle was garaged in Massachusetts. See Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 496 (2004), citing the Restatement (Second) Conflict of Laws § 193 & comment b (1971) ("the rights created by a contract of casualty insurance are to be determined by the local law of the State that the parties to the insurance contract understood would be the principal location of the insured risk during the term of the policy. . . . [I]n the case of an automobile liability policy, the parties ordinarily know beforehand where the automobile will be garaged and that the garaged location is the principal location of the insured risk"). Interpreting the contract under Massachusetts law promotes consistency in the meaning of this standard contract language. See W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. 572, 586 (1990).

 Because Rhode Island does not have a materially greater interest than Massachusetts in the interpretation of the standard form policy, we need not address the second question in Oxford Global Resource, LLC's, second-tier analysis, whether the application of Massachusetts law would be contrary to a fundamental policy of Rhode Island, as Jennifer maintains. 

 Having determined that Massachusetts law applies to the interpretation of the Liberty Mutual policy, we turn to the question posed by Liberty Mutual: does the $250,000 "per person" limit apply? We conclude that it does. In McNeill, 420 Mass. 587, the Supreme Judicial Court interpreted the same standard policy language in a similar context, and that decision controls the outcome here. 

 Like this case, McNeill involved a fatal vehicle accident. 420 Mass. at 587. McNeill's daughter was a passenger in a car that was in an accident; he responded immediately to the scene and witnessed his daughter's injuries, from which she later died. See id. McNeill suffered emotional distress, exacerbating his diabetes and leading to his developing an ulcer. See id. at 587-588. He sued the driver of the car, maintaining, as does Jennifer, that his emotional distress and physical ailments constituted "bodily injury" to a second person (him), and triggered a higher limit under the applicable insurance policy. See id. at 588. The language of that insurance policy was the same as the language at issue here. Id. 

 The court deemed the policy language "clear and unambiguous," ruling that "[i]t applies the 'per person' limit to injuries to 

 Page 634 

more than one person where the injuries result from bodily injuries to the same person in the same accident." Id. at 589. Despite acknowledging that McNeill sought to recover damages both for his daughter's injury and his own emotional distress and physical ailments, the court determined that there had been only one "bodily injury" -- that suffered by McNeill's daughter. Id. at 590. The court reasoned that McNeill's emotional distress was caused by his daughter's injuries and death and was not a separate "bodily injury." Id. The physical ailments, the court ruled, were "the result of the plaintiff's emotional distress, not its cause." Id. Therefore, the court ruled, the "per person" policy limit applied. Id. at 591. 

 Jennifer contends that McNeill is distinguishable because the emotional distress caused by witnessing her husband's fatal accident constituted "bodily injury" to her, thereby triggering a higher policy limit. Relying on scientific studies published since McNeill was decided, she maintains that the understanding of the physical imprint of trauma has evolved, and that we now know that emotional trauma caused by events like witnessing a fatal accident of a family member is an expression of, and intertwined with, changes in the brain. These changes, Jennifer argues, amount to "bodily injury." We do not opine on whether, as a matter of science, this is right or wrong. But as a matter of law, McNeill's holding leaves no space for this argument. The court said, plainly, "emotional distress is not a bodily injury." McNeill, 420 Mass. at 590. See id., quoting Sullivan v. Boston Gas Co., 414 Mass. 129, 138 n.9 (1993) ("We have . . . construed the words 'bodily injury' in an insurance policy to exclude the coverage of mental pain . . ."). Accordingly, we conclude that Jennifer's claim for emotional distress results from the bodily injury to her husband, and that the "per person" policy limit of $250,000 applies to her claim. 

Judgment affirmed. 

FOOTNOTES
[Note 1] Individually, as administrator of the estate of Nathan Correia, and as parent and next friend of Vanessa Correia. 

[Note 2] Because the Correias share a surname, we use first names to avoid confusion. 

[Note 3] The declaratory judgment complaint also named as defendants the named insureds in the policy and the driver involved in the accident, who was listed in the policy as a household member and driver (collectively, insureds). The insureds did not file a notice of appeal from the judgment and are not involved in these proceedings. 

[Note 4] The judge considered the parties' pleadings and exhibits thereto, as well as supplemental material submitted by Jennifer in connection with the motion for judgment on the pleadings. Jennifer requested that the motion be converted to one for summary judgment so that this material would be part of the relevant record. Carefully parsing the supplemental material, the judge found that he could properly take judicial notice of some of it, and that the other material - including articles about the physical imprint of trauma on the brain attached as exhibits to Jennifer's opposition -- was neither subject to dispute by the opposing parties nor material to his decision, which presented a question of law under established Supreme Judicial Court precedent. Although we refer to some of that same material (Jennifer's deposition transcript and articles about the effect of trauma on the brain), we do not rely on it in reaching our conclusion. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.